Charles DALE, Plaintiff-Appellant,

v.

CHICAGO TRIBUNE COMPANY,
Defendant-Appellee.

No. 85–2577.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1986.

Decided July 28, 1986.

Rehearing Denied Oct. 6, 1986.

Marshall Patner, Law Offices of Frederic F. Brace, Jr., Chicago, Ill., for plaintiff-appellant.

John W. Powers, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before WOOD and COFFEY, Circuit Judges, and NOLAND, District Judge.*

NOLAND, District Judge.

The primary question raised by this appeal is whether the Chicago Tribune ("Tribune") violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634 (1982), in terminating Charles Dale ("Dale"), the plaintiff-appellant in this case. In addition to this claim, Dale alleges that his termination violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1381 (1982), and an Illinois common law duty of good faith and fair dealing. Dale also filed a motion to add a named party plaintiff to the action pursuant to the representative action provision of the ADEA, 29 U.S.C. § 626(b) (1982). The district court granted the Tribune's motion for summary judgment, Fed.R.Civ.P. 56, on all counts and dismissed Dale's motion to add a named party plaintiff as moot. On appeal, the Tribune requested this Court to impose sanctions upon Dale, pursuant to Rule 11 of the Federal Rules of Civil Procedure, because of the alleged speciousness of Dale's Illinois common law claim. For the reasons stated below, we affirm the judgment of the district court and decline the Tribune's invitation to impose sanctions upon Dale.

## I. FACTS

Summary judgment is appropriate when there exists "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining wheth-

* The Honorable James E. Noland, Chief District Judge for the Southern District of Indiana, is sitting by designation.

er a genuine issue of material fact exists, a court must construe the facts alleged in a light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) *(per curiam); Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984). Accordingly, the facts, for the purposes of this appeal, are as follows.

Dale was hired as a copywriter by the Tribune in 1956, and was eventually promoted to become manager of the Creative Services Department where he supervised sixty employees. In 1975, the Creative Services and Promotion Departments were merged upon Dale's recommendation, and Dale became the assistant manager of the new entity, entitled the "Creative Division."

Three years later, Tribune President Robert Hunt ("Hunt") and Dale reviewed the operations of the Creative Division and opined that the merger was not achieving its potential because the departments had not been functionally merged, thus the Division had an excessive number of managers. Later in that same meeting, Hunt asked Dale whether Dale was interested in becoming the Tribune's Purchasing Manager. Dale expressed his interest and formally accepted the position after some discussions with General Manager Harold Lifvendahl ("Lifvendahl"). Lifvendahl believed that the Purchasing Department had serious personnel problems and was not professionally operated. Previously, the Purchasing Manager had reported to Building Manager Bruce Cerling ("Cerling"), but Lifvendahl directed Dale to report directly to the General Manager (Lifvendahl). Dale had no prior purchasing experience notwithstanding his general managerial experience, and his appointment to the position was a lateral move with no concomitant increase in compensation.

Once settled in his new position, Dale participated in a three-day purchasing workshop and joined the Chicago Purchasing Managers Group. Within one year of assuming his new position, his department

obtained responsibility for newsprint traffic, travel planning and telephone operations. Dale continued to report to Lifvendahl until Lifvendahl was transferred to Florida. Dale reported to Lifvendahl's replacement, Thomas O'Donnell ("O'Donnell"), for five months, until O'Donnell directed Dale to report to Cerling instead. Dale expressed his reservations about this change because Lifvendahl had brought Dale into the Purchasing Department to rectify the "serious personnel problems" that had existed under Cerling's supervision.

In 1981, Charles Brumback ("Brumback") became the new President of the Tribune. Brumback initiated an overall program to reduce costs and maximize profits by implementing cost and personnel reductions, and undertaking cost-saving equipment improvements. Brumback made substantial changes in the Tribune's management philosophy which were reflected in Dale's deposition:

> [The existing management team was] a long, long time Tribune group. We knew one another. We worked up through the ranks together. And I think we worked well together, all with problems. You are never without problems or personality problems.
>
> But we pretty well knew how the other person operated, and tried to work within the system. I do not think Mr. Brumback wanted that kind of a system. I think he wanted to bring in a different kind of Management Team.
>
> And I think he would have called it, quote, a modern Management Team, one that is attuned to innovation, to new ideas, change.
>
> And, this is an opinion, I believe Mr. Brumback did not think the Management Team at the Tribune was capable of doing this. I believe he was wrong.

Deposition 1, Charles Dale, Aug. 30, 1984, p. 96.

Dale's performance began to be criticized by Brumback soon after Brumback became Tribune President. On August 31, 1981, Dale reflected this in a letter to Lifvendahl:

The problem in brief, is that I think Brumback is setting the groundwork for my termination. It may come two weeks from now, or two months, but I think he's getting me programmed.

It's too long to go into all the detail, other than he's given me a major going over on everything he's questioned me about—and the things he's picked on have been minor and basically have been matters of opinion. He seems to be doing this to a whole clutch of Tribune executives and managers: things we've done in the past, are proposing now, or have planned for the future are archaic and disorganized according to his lights.

Appellant's Appendix on Appeal, § 3, p. 797. Although Dale was unable to recall the nature of Brumback's criticisms with specificity in his deposition approximately three years later, Dale did indicate that some of the criticisms involved significant issues. Deposition 2, Charles Dale, Nov. 12, 1984, pp. 66-67.

On October 5, 1981, Cerling assigned Dale a number of projects designed to rectify deficiencies that Cerling perceived in Dale's performance as Purchasing Manager. Deposition 2, Charles Dale, Nov. 12, 1984, p. 79. The items included on the list involved matters of basic purchasing operation, many of which had either been discussed or initiated prior to the time Cerling assumed supervisory control of the Department.

On November 18, 1981, Cerling prefaced a memorandum to Dale with the following:

On October 5, we had a meeting at which I gave you a number of projects to be completed with dates (attached).

I thought it would be helpful if I documented other conversations and my concerns.

Since acquiring responsibilities of Purchasing and Telephone, I have observed a lack of fundamental management techniques; these are, poor organization, planning, control, leadership, direction and knowledge.

Appellant's Appendix on Appeal, § 2, p. 780. The memorandum went on to list specific examples of Dale's deficiencies, focusing on his installation of a new cost-saving telephone system. Among the particular criticisms were a failure to plan adequate space; a lack of adequate consultation with the appropriate Tribune Departments; errors in the instruction manual and directory; a lack of an adequate new-employee training program; and a failure to provide for a transfer of night calls. In his deposition, Dale acknowledged the existence, but not the gravity of these problems. Deposition 2, Charles Dale, Nov. 12, 1984, pp. 106-32.

The November 18 memorandum also criticized Dale's inability to use the several computer systems employed by the Purchasing Department, as well as Dale's failure to become a "professional purchasing person" with his own "buying subjects." In essence, Dale answered these criticisms by reasoning that in his opinion it was neither efficient nor necessary for a manager to become proficient in these areas. Deposition 2, Charles Dale, Nov. 12, 1984, pp. 136-37.

In December of 1981, Cerling sent Dale a third critical memorandum detailing a number of Dale's failings as a supervisor in the Purchasing Department. Dale countered that these criticisms were either unwarranted or premature. Deposition 2, Charles Dale, Nov. 12, 1984, pp. 145-53. Finally, a similar Cerling memorandum in March of 1982 chided Dale for his failure to rectify the previously cited criticisms as well as pointing out several new examples of Dale's poor management skills. Dale acknowledged the problems listed in the March 3 memorandum, but placed the blame for those problems upon others in the Tribune organization. Deposition 3, Charles Dale, Dec. 18, 1984, pp. 5-37.

Approximately one month later, Brumback summoned Dale into his office and terminated his employment because of his failure to function efficiently as Purchasing Manager. Dale was given the option of accepting immediate termination with severance pay, or volunteering for "early re-

tirement" upon his fifty-fifth birthday in July. Dale selected the latter.

On December 22, 1982, Dale filed an age discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") identifying the Tribune as the charged party. Dale received a right to sue letter on June 17, 1983. On April 11, 1984, Dale commenced this action in the district court by filing the aforementioned three-count complaint. The district court granted the Tribune's motion for summary judgment on all three counts and dismissed Dale's motion to add a named party plaintiff as moot.

## II. DISCUSSION

### A. *ADEA Count*

In an age discrimination suit, the burden of persuading the trial court that the defendant discriminated against the plaintiff remains with the plaintiff at all times. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011 (1st Cir.1979); *see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The plaintiff can carry this burden directly by presenting direct or circumstantial evidence that he was discharged because of his age. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 122, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985); *Johnson v. University of Wisconsin-Milwaukee*, 783 F.2d 59, 63 (7th Cir. 1986); *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984).

If, as in this case, the plaintiff presents no direct evidence of age discrimination,

the shifting burdens set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981),[1] provide an indirect method of proof. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984). Pursuant to that framework, a plaintiff carries the initial burden of establishing a *prima facie* case of age discrimination. Once a *prima facie* case has been established, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. If the employer carries this burden, then, the employee must prove by a preponderance of the evidence that the employer's explanation was a mere pretext for discrimination. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093; *Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1217 (7th Cir. 1985).

In order to establish a *prima facie* case under the ADEA, a plaintiff must show (1) that he belongs to the protected class, (2) that his job performance was sufficient to meet his employer's legitimate expectations, (3) that he was discharged in spite of his performance, and (4) that the employer sought a replacement for him. *Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1217 (7th Cir.1985); *La Montagne*, 750 F.2d at 1409 (7th Cir.1984).[2]

There is a substantial question in this case whether, on the record before this Court, Dale has established a *prima facie* case. Dale's age clearly places him within

---

**1.** *McDonnell Douglas*—a race discrimination case—and *Burdine*—a sex discrimination case—were brought under Title VII of the Civil Rights Act of 1964. It is accepted now that the general shifting burden framework is applicable to age discrimination suits under the ADEA. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 117–25, 105 S.Ct. 613, 620–23, 83 L.Ed.2d 523 (1985); *Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1217 (7th Cir.1985).

**2.** This four part test was first set forth in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. That case involved discrimination in hir-

ing, thus, the substantive standard employed by factors (2) and (3) of the above *prima facie* test was the qualification of the applicant. In order to tailor these factors to address a potential ADEA discharge, the *Loeb* court substituted for an applicant's qualifications, the standard used by an employer to measure an existing employee's "qualifications," *i.e.*, job performance. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979). This adaptation has been adopted by this Circuit. *See Allis-Chalmers*, 769 F.2d at 1217; *La Montagne*, 750 F.2d at 1409; *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir.1983).

the parameters of the protected class. In addition, although no mention of a replacement for Dale appeared in the briefs or the record, this Court will assume that the Tribune sought a replacement. Thus, the crucial issue in Dale's *prima facie* case is whether he can establish, by a preponderance of the evidence, that his job performance satisfied the legitimate expectations of the Tribune. *Huhn v. Koehring,* 718 F.2d 239, 244 (7th Cir.1983). This factor envisions a bifurcated inquiry, *i.e.,* whether the employer's expectations were legitimate and if so, whether the employee was meeting those expectations. Although the inquiry into whether the employer's expectations were legitimate is a limited one, *id.* (quoting *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)), the court must determine whether the employer communicated those expectations to the employee and whether those expectations were unreasonable. *Id.*[3] In this appeal, the record clearly establishes that the Tribune communicated its expectations to Dale long before he was terminated. Furthermore, the multiple memorandums of Cerling and the criticisms of Brumback indicate that Dale's performance was not satisfying their expectations.[4]

The record also demonstrates that Dale has failed to carry his burden of clearly establishing that the Tribune's expectations were unreasonable. There is a complete absence of any showing in the record that Dale's workload was excessive, that his assignments were unachievable, or that the demands placed upon him were unreasonable. As a result, Dale has failed to state a *prima facie* case of age discrimination under the ADEA. *Huhn v. Koehring,* 718 F.2d 239, 244–45 (7th Cir.1983).

Assuming, *arguendo,* that Dale could carry this initial burden, a rebuttable presumption of discrimination arises and the burden shifts to the Tribune to articulate a legitimate non-discriminatory reason for the discharge. This burden, however, is merely a burden of production, *Burdine,* 450 U.S. at 255–58, 101 S.Ct. at 1094–96, *Haskell v. Kaman Corp.,* 743 F.2d 113, 119 (2d Cir.1984), *Loeb,* 600 F.2d at 1011, that is not difficult to satisfy.[5] In this case, the

---

**3.** This inquiry is necessitated by the potentiality of an employer imposing imposible conditions upon an employee in order to create a pretext for terminating the employee because of his age. Under those circumstances, an employee will be unable to establish a *prima facie* case because he will be unable to establish that he satisfied his employer's expectations. This in turn will bar the plaintiff from ever establishing that the employer's explanation is a pretext for unlawful age discrimination. In order to balance the admonitions of the *Kephart and Huhn* cases with this contingency, this Court is required to conduct only a cursory examination into the reasonableness of the employer's expectations.

**4.** The standard used to determine whether an employee has carried this *prima facie* burden is quite clear:

> Plaintiff in essence, to establish a prima facie case must eliminate the most obvious legitimate reasons for the employer's actions—plaintiff's lack of qualification or the employer's lack of need—to establish that the employer was motivated by an illegitimate reason. This method of proving plaintiff's case in chief is available to those claiming age discrimination as well as any other type of discrimination.

*Monroe v. United Airlines, Inc.,* 736 F.2d 394, 403 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985); *See also Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *La Montagne,* 750 F.2d at 1410; *Parker v. Federal National Mortgage Association,* 741 F.2d 975, 979 (7th Cir.1984).

The most obvious legitimate reason for the discharge of an employee is that the employee's inadequate job performance necessitated his termination. In the instant case, Dale was warned that his job performance was inadequate and was subsequently terminated for that very reason. Thus, pursuant to the framework established in the *Furnco* line of cases cited *supra,* Dale must eliminate inadequate performance as the reason for his discharge in order to establish a *prima facie* case. Dale has not done this.

**5.** The Supreme Court set forth a standard to analyze this burden in the *Burdine* case. "The defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094 (citations omitted).

record demonstrates that the Tribune terminated Dale because it no longer viewed Dale as qualified to fulfill his obligations as Purchasing Manager. This explanation satisfies the Tribune's burden of production, *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 n. 1 (2d Cir.1984), *Mantione v. Ted Bates Advertising*, 38 Fair Empl. Prac. Cas. (BNA) 1457, 1461 (S.D.N.Y.1985) [Available on WESTLAW, DCTU database] and the presumption of discrimination is therefore rebutted. *See Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094; *La Montagne*, 750 F.2d at 1409.

The burden now shifts back to Dale to prove that the Tribune's articulated reasons are a pretext by showing that the employer's explanation is unworthy of credence or that it is more likely that a discriminatory reason motivated the employer's actions. *See Burdine*, 450 U.S. at 253–56, 101 S.Ct. at 1093–95; *La Montagne*, 750 F.2d at 1409.[6] In order to carry this burden the plaintiff must establish that he was discharged because of his age. *Golomb v. Prudential Insurance Co. of America*, 688 F.2d 547, 550 (7th Cir.1982); 29 U.S.C. § 623(a).[7] Dale need not prove that age was the only factor motivating his discharge, but he must prove that age was "a determining factor," *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir.1980), *Loeb*, 600 F.2d at 1011–12, "in the sense that he would not have been discharged 'but for' his employer's motive to discriminate against him because of his age." *La Montagne*, 750 F.2d at 1049.

In order to rebut the Tribune's proffered explanation, Dale must refute the Tribune's specific explanations. *See Christie v. Foremost Insurance Co.*, 785 F.2d 584, 586 (7th Cir.1986); *La Montagne*, 750 F.2d at 1414. On at least five occasions during an eight month period from 1981 to 1982, Dale's job performance was criticized by his superiors. In his October 5, 1981, memorandum, Cerling provided Dale with a specific list of projects and their projected completion dates. In a follow-up memorandum on November 18, 1981, Cerling criticized Dale's fundamental management abilities and indicated his dissatisfaction with Dale's performance regarding the October 5, 1981, items. Dale received similar memoranda specifically criticizing his performance from Cerling in December and March.

Dale can point to nothing in the record, besides his own perceptions, to support his assertion that his performance was adequate. Neither positive evaluations from his personnel file, nor statements of independent third parties to the effect that his performance as Purchasing Manager was adequate, were submitted by Dale. Instead, Dale relies exclusively on his own depositions, 356 pages in length, to rebut the criticisms of his superiors. Throughout his depositions, Dale's rebuttal consists entirely of assertions either that in his mind his performance was adequate, or that the skills Cerling required of him were unnecessary for a Purchasing Manager.

This Court will not, however, delve into the question of which portrayal is the correct one. *See Allis-Chalmer*, 769 F.2d at 1218–19. This Court does not sit as a super-personnel department that reexamines an entity's business decisions. *See Huhn*, 718 F.2d at 244 (quoting *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)). The question is not whether the Tribune exercised prudent business judgment, *id.*, but whether Dale has come forward to refute the articulated, legitimate reasons for his discharge. In this regard, Dale must do more than challenge the judgment of his superiors through his own self-interested assertions. *Id.* "[The em-

6. At this point, the employee is given the opportunity to prove that his employer's unreasonable performance expectations were a pretext for age discrimination.

7. Section 623(a) of the ADEA provides the following:

It shall be unlawful for an employer—
(1) to fail or refuse to hear or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age. 29 U.S.C. § 623(a) (1982) (emphasis added).

ployee's] perception of himself, however, is not relevant. It is the perception of the decision maker which is relevant." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980). Dale has not made a sufficient showing to contradict his superior's negative assessments of him.[8]

Furthermore, as discussed above, Dale must establish a nexus between his evidence and age discrimination in that "but for" his age, he would not have been terminated.[9] The only other material submitted by Dale relating to this issue was an *in camera* exhibit that listed seventy-seven Tribune management employees aged forty to seventy who left the employment of the Tribune from 1982 to 1984 (hereinafter "the seventy-seven"). This "statistical evidence," however, is riddled with defects. Included on the list are all ADEA class Tribune management employees who left the employment of the Tribune for any reason, including death, transfer, promotion, disability, voluntary retirement, voluntary resignation, and involuntary termination. Of the seventy-seven employees on the list, thirteen either died, were promoted, were transferred, or suffered a long term disability. Of the remaining sixty-four, approximately twenty were sixty-two or older and the reason for their termination was listed as *voluntary* retirement. Of the remaining forty-four employees, only eighteen, including Dale, were listed

as having been terminated involuntarily. Dale has made no showing that any of these terminations were unjustified. Moreover, Dale has not provided this Court with the total number of ADEA class managers that worked at the Tribune during the years in question, or the number of such managers that remained on the payroll in spite of the alleged "age discrimination."[10] Furthermore, nothing in the record indicates that these seventy-seven terminations constituted an abnormal shift in the number of terminations of ADEA class management employees.[11] This Court concludes that for these reasons this statistical evidence lacks sufficient probative value to rebut the Tribune's proffered explanation for Dale's discharge. *See Parker v. Federal National Mortgage Association*, 741 F.2d 975, 980 (7th Cir.1984).

■ In summary, Dale's self-interested, conclusory assertions of discrimination when combined with his dubious statistical evidence are not adequate to rebut the Tribune's proffered explanation for Dale's discharge, namely, poor job performance.

## B. *ERISA Count*

The district court construed Count II of Dale's Complaint to allege that the Tribune's discharge of him violated sections

**8.** Summary judgment is the proper method to test the evidence in order to preempt trial. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee note. "[Dale] should not be allowed to proceed with a case on the mere hope that trial would produce evidence he was unable to garner at the stage of summary judgment." *Parker v. Federal National Mortgage Association*, 741 F.2d 975, 980 (7th Cir.1984).

**9.** In support of his position, Dale infers that Cerling harbored a personal vendetta against him because of events that transpired in the past. This personal animosity, however, has no bearing on whether age was a determining factor in Dale's termination. "Personality conflicts alone cannot support a basis for an ADEA claim." *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir.1982); *Graefenhain v.*

*Pabst Brewing Co.*, 620 F.Supp. 696, 703 (E.D. Wis.1985). Furthermore, at the time of Dale's discharge, Cerling and Brumback were the same age as Dale, fifty-four years old.

**10.** The Tribune employs more than 4,000 persons, thus, it is likely that a significant percentage of this number, during the relevant time period, was made up of management employees between ages forty and seventy.

**11.** It is important to note that Brumback was instituting a new management philosophy at the Tribune. Thus, a higher turnover of long-term Tribune employees, entrenched in established practices, might have been expected had a more complete record borne that out. The desire to establish a new management philosophy by assembling a new management team that displaces older employees does not *ipso facto* constitue ADEA discrimination. *See La Montagne*, 750 F.2d at 1413; *Kephart*, 630 F.2d at 1224.

510 [12] and 502 [13] of ERISA. Although these sections provide that an aggrieved party may file a civil action to redress alleged ERISA violations, they do not state whether exhaustion of administrative remedies is a precondition to filing that action. The rule in this Circuit is clear. The application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court. *Kross v. Western Electric Co., Inc.*, 701 F.2d 1238, 1244–45 (7th Cir.1983); *Lieske v. Morlock*, 570 F.Supp. 1426, 1429 (N.D.Ill. 1983). A decision committed to the sound discretion of the district court can be disturbed on appeal only if there has been a clear abuse of discretion. *Kross*, 701 F.2d at 1244; *Medina v. Castillo*, 627 F.2d 972, 974–75 (9th Cir.1980).

The district court, in exercising its sound discretion on this issue, applied the exhaustion doctrine to this case. Dale does not contest the fact that he failed to exhaust his administrative remedies prior to filing the instant suit. Rather, Dale argues that one of the recognized exceptions to the exhaustion doctrine, futility,[14] is applicable to his case because a single individual was responsible for discharge policies and

ERISA benefit claims at the Tribune, namely the Tribune Personnel Director.

■ First, the record clearly establishes that the Tribune extensively argued the issue of Dale's failure to exhaust his administrative remedies in its motion for summary judgment. The Tribune's contention on appeal, that Dale neither countered the exhaustion argument nor raised the ERISA issue in his opposition to summary judgment, is borne out by the record.[15] Because Dale failed to raise these issues at the trial court level, he is barred from arguing them on appeal.

> It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.

*Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir.1983).

■ Secondly, although the invocation of this doctrine can render harsh results, a closer examination of the merits of the underlying ERISA claim reveal that it does not work an injustice in this case. Assuming, *arguendo*, that Dale had raised these

---

**12.** Section 510 of the ERISA has been codified and provides in pertinent part:

It shall be unlawful for any person to *discharge*, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. 29 U.S.C. § 1140 (1982) (emphasis added).

**13.** Section 502 of the ERISA has been codified and provides in pertinent part:

A civil action may be brought:
(1) by a participant or beneficiary—

.     .     .     .     .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

.     .     .     .     .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of this plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or their terms of the plan; 29 U.S.C. § 1132 (1982).

**14.** *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.1980). Other exceptions to the exhaustion doctrine that have been recognized by some courts include inadequacy of the administrative remedy, *id.*, and wrongful denial of access to internal administrative procedures. *See Lucas v. Warner & Swasey Co.*, 475 F.Supp. 1071 (E.D. Pa.1979). Only the futility exception has been raised by Dale in this appeal.

**15.** In his reply brief to this Court, Dale argues that he raised the ERISA issue in a footnote in his memorandum in opposition to summary judgment. Dale's memorandum contained seven footnotes and the single reference to ERISA was in a footnote that addressed the propriety of "notice" pursuant to Rule 23 class actions. Fed.R.Civ.P.23.

claims at the trial court level, there is nothing in the record to indicate that exhaustion in this instance was an exercise in futility. The fact that the defendant is in charge of both discharges and ERISA benefit administration does not alone constitute futility. *See Kross*, 701 F.2d at 1245. Similarly, the absence of a "neutral arbitrator" in the administration of the initial ERISA procedures does not, by itself, render the exhaustion of such procedures futile. *Amato v. Bernard*, 618 F.2d 559, 569 (9th Cir. 1980).

### C. *Illinois Common Law Claim*

■ The ERISA analysis discussed above is equally applicable to Dale's Illinois common law claim. Dale argues on appeal that although his contract with the Tribune was at-will, the Tribune owed him an implied duty of good faith and fair dealing, which it breached when it terminated him. Again, the Tribune argued this issue in its motion for summary judgment and Dale did not counter these arguments in his motion in opposition. Accordingly, Dale is barred from raising these arguments to this Court on appeal.

Moreover, the substantive merits of Dale's position on this issue are also fatally flawed. In order to obtain relief on this count, Dale asks this Court to anticipate upcoming changes in the Illinois state law. The most recent Illinois case cited by either party that addresses the issue of an implied duty of good faith and fair dealing in a case not involving a retaliatory discharge, summarized the present Illinois law as follows:

> Care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general contract principle of good faith and fair dealing. We conclude that existing principles of tort law are adequate without our creating a new action based on a

vague notion of fair dealing. A general "bad faith" tort based on breach of contract would undoubtedly be difficult to apply in most cases and superfluous in cases such as the present one, which primarily sounds in contract.

*Martin v. Federal Life Insurance Co.*, 109 Ill.App.3d 596, 607, 65 Ill.Dec. 143, 151, 440 N.E.2d 998, 1006 (1st Dist.1982). Dale has not convinced this Court that any change is forthcoming in this area of the Illinois law.[16]

### D. *Dale's Motion to Add a Party Plaintiff*

■ On July 10, 1985, subsequent to the filing of the Tribune's motion for summary judgment, Dale filed a motion to add a named party plaintiff, John Hanneman, to his ADEA claim pursuant to the representative action provision of the ADEA. 29 U.S.C. § 626(b) (1982). Because the district court granted the Tribune's motion for summary judgment, it dismissed Dale's motion as moot. Having affirmed the district court's entry of summary judgment on all counts, this Court similarly concludes that Dale retains no viable ADEA claim to which a named party plaintiff may be added. Therefore, Dale's motion to add a named party plaintiff is rendered moot and dismissed.

### III. CONCLUSION

The district court's entry of summary judgment on all counts in favor of the defendant, and its dismissal of the plaintiff's motion to add a named party plaintiff, are affirmed. The defendant's motion to impose sanctions upon Dale is denied.

---

**16.** On the final page of legal argument in the Tribune's brief to this Court, the Tribune requested, for the first time, that sanctions be imposed against Dale because his Illinois common law claim "was not warranted." This Court concludes that Dale's common law claim possessed sufficient merit to withstand such a request. Accordingly, the Tribune's motion is denied.