Walter **AKERBERG**, Plaintiff,

v.

**CATTY CORPORATION**, an Ohio corporation, Defendant.

No. 86 C 6210.

United States District Court, N.D. Illinois, E.D.

Sept. 21, 1988.

**314**

John W. Norris, Nicholas Anaclerio, Jr., Brydges, Riseborough, Morris, Franke and Miller, Chicago, Ill., for plaintiff.

Max G. Brittain, Jr., Elliot H. Goldman, Kovar, Nelson & Brittain, Chicago, Ill., Alan M. Rauss, Kohrman, Jackson & Krantz, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Walter Akerberg ("Akerberg") brought suit against his former employer, Catty Corporation ("Catty"), claiming Catty terminated his employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sections 621, *et seq.* Presently before the court is defendant's Catty motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated in this memorandum opinion and order, the motion is granted.

### I. *Facts*

Catty is engaged in the business of providing foil laminated packaging. (Plaintiff's first amended complaint, Count I, para. 1.) Catty hired Akerberg at its plant in Huntley, Illinois in July of 1946. (*Id.,* para. 2.) In August, 1975, Akerberg became a production manager for the defendant. (*Id.* para. 3.)

In October, 1983, Catty was purchased by International Foils, a subsidiary of Rostra Holding Company. (Strautnieks Dep. 13.) John Strautnieks ("Strautnieks"), the new president of Catty, hired Pat Meathe ("Meathe") as the new general manager of the operation. (Meathe Dep. 6.) Meathe testified that the technology within the plant was at least 25 years behind anybody else in the business, and sought to bring in a comptroller and a plant engineer to address the overall problem. (Meathe Dep. 18.) Strautnieks also retained Ted Lawther as plant manager and Akerberg as production manager at the Huntley plant. (*Id.* 9.)

According to Strautnieks, the plant was losing money in October, 1984. (Strautnieks Dep. 49.) At that time, Strautnieks hired a new management team, consisting of Robert Stransbury ("Stransbury") as vice-president/general manager and Sam Mangia ("Mangia") as production manager. (*Id.* 7.) As a result, Stransbury was in a supervisory role over the plaintiff. (Akerberg Dep. 32, 33.) James Mellin was also hired as a senior project engineer and later promoted as director. (Mellin Dep. 9.) Mellin's duties and responsibilities were to develop a plan to bring Catty up to the twentieth century. (*Id.*)

Stransbury believed that efficiency could be improved by consistently running the presses at faster speed and so informed the plaintiff. (Stransbury Dep. 56, 61; Akerberg Dep. 21, 22.) Akerberg was able to successfully increase the speed of the presses on some jobs. (Akerberg Dep. 32.)

Stransbury testified in his deposition that, after observing plaintiff's performance during the period of October, 1984 until May, 1985, he found Akerberg's performance to be inadequate. (Stransbury I Dep. 8.) Stransbury also concluded Akerberg had problems in various areas, such as unsafe practices, scrap production, and quality control. (*Id.* at 55–56, 65–66, 707, 83–84.)

According to Akerberg, however, Stransbury told him on several occasions during that period that he was doing a good job and not to retire. (Akerberg Dep. 28–29, 37.) Furthermore, Stransbury did not give Akerberg any written warnings that his performance was inadequate. (Stransbury

I Dep. 61.) Nor did Stransbury give specific goals to Akerberg as far as press speeds, scrap production, and other work areas. (*Id.* 82–85.)

In February, 1985, Akerberg received a pay raise of more than 5–½%, which was given for merit. (Stransbury I Dep., Ex. 5.) Stransbury, who authorized the raise, testified in his deposition that raises were based upon performance. (Stransbury I Dep. 94.) He further testified that, from 1984 to 1985, the smallest raise he gave was 2% or less, while the largest was approximately 7%. (*Id.* 95.)

By April, 1985, Mangia was functioning as production manager. (Plaintiff's first amended complaint, Count I, para. 4; Strautnieks Dep. 12.) Akerberg was then demoted to the position of production supervisor. (Plaintiff's first amended complaint, Count I, para. 4; Stransbury I Dep. 85–86.) Mangia was less than forty years of age at the time. (*Id.*)

In May, 1985, Akerberg injured his hand while working on production machinery. (Akerberg Dep. 38.) Akerberg was absent from work between May 22, 1985 and October 9, 1985. (*Id.*) Stransbury claims in his deposition that during the time Akerberg was absent due to his injury, press speed increased dramatically, and production output went up 40 to 60%. (Stransbury I. Dep. 71–73.)

The record also reveals that, during this time period, however, Catty requested Akerberg to return to work to assist them in setting up presses and solving production problems. In a letter dated August 2, 1985, Dennis Elliot, claims representative for Hartford Insurance, confirmed that Akerberg could meet with management personnel at Catty to discuss and provide answers to the problems they encountered in their day-to-day operations, without jeopardizing his workman's compensation benefits. (Elliot aff., Ex. C, paras. 2–3.)

On November 15, 1985, approximately one month after plaintiff's return to work, Akerberg was advised by Stransbury either "to resign and take retirement or resign under termination." (Plaintiff's first amended complaint, Count I, para. 6;

Stransbury I Dep. 53, Ex. 3.) At this time, Stransbury told Akerberg that he was dissatisfied with his work. (Akerberg Dep. 50.) Since he chose not to retire, Akerberg, at the age of 66, was discharged on November 27, 1985. (Plaintiff's first amended complaint, Count I, para. 6.) Subsequently, Akerberg's position as production supervisor was eliminated. (Stransbury aff., para. 3.)

On March 17, 1986, Akerberg filed age discrimination charges with the Illinois Department of Human Rights and subsequently with the United States Equal Employment Opportunity Commission. Akerberg commenced this suit on August 20, 1986, and subsequently filed his first amended complaint, alleging that Catty discriminated against him because of his age in demoting him and then discharging him. On February 6, 1987, this court dismissed in Count I Akerberg's claim of discrimination arising from his demotion and Count II (willful discrimination) in its entirety. Presently before this court is Count I of Akerberg's complaint alleging age discrimination arising from his discharge in November, 1985.

Catty filed its summary judgment motion, arguing that Akerberg failed to prove age discrimination under ADEA standards. Catty contends that Akerberg has failed to establish a *prima facie* case because he cannot establish that he met his supervisor's legitimate expectations and he cannot demonstrate that he was not replaced by a person outside the protected group. Catty also contends that Akerberg cannot carry his burden of showing that his supervisor's articulated rationale for discharging him was a pretext for age discrimination. Akerberg argues that a motion for summary judgment is inappropriate because material issues of fact exist concerning his job performance as well as the ultimate reason for his discharge.

II. *Age Discrimination Analysis*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, present no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether an issue of material fact exists, the court must construe the facts alleged in the light most favorable to the party opposing the motion for summary judgment. *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir.1985), *quoting Janowiak v. City of South Bend,* 750 F.2d 557, 559 (7th Cir.1984).

◼ Congress enacted the ADEA to prohibit arbitrary age discrimination in employment. 29 U.S.C. § 621. The ADEA makes it unlawful for an employer to refuse to hire, discharge, or otherwise discriminate against any individual between forty and seventy years old with respect to his or her compensation, terms, conditions, or privileges of employment, because of that individual's age. 29 U.S.C. § 623(a), § 631(a); *Oxman v. WLS-TV,* 846 F.2d 448, 452 (7th Cir.1988). The plaintiff's ultimate burden in an age discrimination case is to prove that he was discharged because of his age. *LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). "To accomplish this, he must prove not that age was the sole factor motivating the employer to discharge him but that age was a 'determining factor,' in the sense that he would not have been discharged but for his employer's motive to discriminate against him because of age." *Id.*

◼ A plaintiff may prove age discrimination either through direct or circumstantial evidence. Or he may utilize the indirect, burden-shifting method of proof for Title VII cases set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to age discrimination claims under the ADEA. *Oxman, supra,* 846 F.2d at 453. Under the *McDonnell Douglas* burden-shifting method, a discharged plaintiff can establish a *prima facie* case of age discrimination by showing (1) that he was in the protected class, (2) that he was doing his job well enough to meet his employer's legitimate expectations, (3) that in spite of his performance, he was discharged, and (4) that his employer sought a replacement for him. *Id.* at 452–453. However, the Seventh Circuit Court of Appeals in *Oxman v. WLS-TV,* held that a plaintiff in a reduction in force ("RIF") discharge case can establish the fourth element of the *McDonnell Douglas prima facie* proof formulation by showing instead that "others not in the protected class were treated more favorably." *Id.* at 455.

◼ If the plaintiff succeeds in proving a *prima facie* case of discrimination, the burden of *production* shifts to the defendant to articulate lawful reasons for the plaintiff's discharge. *Id.* at 453; *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–96, 67 L.Ed.2d 207 (1981). Once the defendant articulates a legitimate non-discriminatory reason for its actions, the burden shifts back to the plaintiff to prove that the defendant's preferred reasons are pretextual. *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093. "The plaintiff can do so by showing either that a discriminatory reason more likely than not motivated the employer or that the employer's preferred explanation is incredible." *Oxman, supra,* 846 F.2d at 453. At all times, the ultimate burden of persuasion rests with the plaintiff that the defendant discriminated against the plaintiff because of age. *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093.

Akerberg contends that he has established a *prima facie* case of age discrimination according to the *McDonnell Douglas* standard. Clearly, two of the elements of the indirect method of proof are undisputed: Akerberg's age falls within the protected class of persons aged 40 to 70, and he was discharged.

Catty disputes that Akerberg can satisfy the fourth element of the *McDonnell Douglas prima facie* proof formulation, that he was replaced in his position by a younger person. Catty directs this court's attention to Stransbury's statement that no replacement was hired for Akerberg's position as production supervisor. (Stransbury aff., para. 3)

■ The Seventh Circuit has recently announced, however, that where a discharged individual is not replaced, plaintiff need only establish that "others not in the protected class were treated more favorably." *Oxman v. WLS–TV, supra,* 846 F.2d at 455. In this case, Stransbury hired a younger person, Mangia, for Akerberg's position as production manager. After "showing Mangia the ropes," Akerberg was then demoted to the position of production supervisor, and then finally fired from his new position. Based on these facts, Akerberg has presented sufficient evidence that Mangia was treated more favorably, thereby meeting the fourth element of a *prima facie* case.

Catty also disputes that Akerberg can satisfy the second element of the *McDonnell Douglas prima facie* case, that his job performance satisfied his employer's legitimate expectations. This court's inquiry is two-fold: "whether the employer's expectations were legitimate and, if so, whether the employee was meeting those expectations." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 463 (7th Cir.1986). Although the inquiry into whether the employer's expectations were legitimate is a limited one, the court must determine whether the employer communicated those expectations to the employee and whether those expectations were unreasonable. *Id.*

Akerberg alleges that he was meeting his employer's legitimate expectations, pointing to his 5–½% salary increase for merit awarded in February, 1985, testimony from two co-workers who thought he was performing his job well and in a safe manner, and Catty's request for his assistance in setting up presses and solving production problems while he was absent from work due to an injury. In addition, Akerberg submits his own deposition testimony that Stransbury told him on several occasions that he was doing a good job and not to retire.

Stransbury claims that Akerberg's performance was inadequate in such areas as scrap production, quality control, and unsafe work practices. (Stransbury I Dep. 82–85.) However, there are no records or written warnings of inadequate performance in these areas. Since the record is silent as to whether Stransbury instructed Akerberg on his expectations as to scrap production, quality control, and unsafe practices, Catty's reason for discharge on this basis appears to be *ad hoc* rationalization.

But Stransbury testified in his deposition that one of his obligations was to increase the speed at which the presses were run and eventually increase product efficiency and so informed the plaintiff. (Stransbury Dep. I 56; II 83, 84.) Akerberg testified in his deposition that he was aware that Stransbury wanted to run the presses consistently faster. (Akerberg Dep. 21, 22.) Akerberg acknowledged that he was able to increase speeds on some jobs. (*Id.* 32.) Thus, Catty communicated its expectations to Akerberg that increased press speeds were a priority and, by Akerberg's own admission, he failed to achieve it on all jobs.

■ In order to carry his burden of establishing that Catty's expectations were unreasonable, Akerberg's rebuttal evidence must focus on Catty's specific reasons for discharge. *See Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1425 (7th Cir.1986). The evidence offered by Akerberg does not specifically address Catty's articulated rationale. Moreover, Akerberg has failed to present evidence that his workload was excessive, that a request for higher press speeds in general was unachievable, or that demands upon him were unreasonable. *See Dale, supra,* 797 F.2d at 463. In addition, none of the witnesses deposed testified that plaintiff could not achieve higher press speeds. In fact, Akerberg's own witness testified that Stransbury was not satisfied with running speeds and admits at one point the presses ran faster in his absence. (Young Dep. 32.) Since the uncontradicted evidence reveals that Akerberg did not perform to the level of his employer's expectations, he has failed to state a *prima facie* case of age discrimination under the ADEA.

■ Assuming, *arguendo,* that Akerberg could establish a *prima facie* case of

age discrimination, under the *McDonnell Douglas* standard, the burden shifts to Catty to articulate a legitimate non-discriminatory reason for the discharge. *See Burdine, supra,* 450 U.S. at 255–58, 101 S.Ct. at 1094–96. In this case, Catty discharged Akerberg because of its dissatisfaction with his job performance, specifically, his failure to consistently run the presses at faster speeds. Catty has sufficiently rebutted the presumption of discrimination with a legitimate, non-discriminatory reason for Akerberg's termination, thereby satisfying his burden of production. *See Oxman, supra,* 846 F.2d at 453.

■ The burden then shifts to Akerberg to prove that the reason asserted by Catty is merely a pretext for unlawful discrimination. *See Burdine, supra,* 450 U.S. at 254–255, 101 S.Ct. at 1094. In order to demonstrate pretext, Akerberg must produce evidence that Catty's decision to discharge him "more likely than not was motivated by discriminatory reasons or that its proferred explanations are unworthy of credence." *Oxman, supra,* 846 F.2d at 453. But what cannot be used to argue "pretext" is evidence that the employer acted irrationally or failed to follow sound business practices. *Zick v. Verson Allsteel Press Co.,* 644 F.Supp. 906, 911 (N.D.Ill. 1986).

Akerberg questions the judgment of his supervisor in demanding greater press speeds. He points to Stransbury's own testimony that increased press speeds may result in machine breakdowns or quality control problems. (Stransbury II. Dep. 83.) Akerberg also offers the testimony of Young that the machines had the capability of running faster, but when they did, they had greater scrap problems. (Young Dep. 30–31.)

However, Akerberg cannot claim that an undisputably attainable expectation is unreasonable by challenging the reasonableness of the employer's business judgment. *See, Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1233 (7th Cir.1980). In *Kephart,* the court stated:

The question before the court is not whether the company's methods were sound, or whether its dismissal of [plaintiff] was an error of business judgment. The question is whether he was discriminated against because of his age.

*Id.* at 1233. This court therefore declines to second-guess Catty's business decisions. *See Stratton v. Handy Button Machine Co.,* 639 F.Supp. 425 (N.D.Ill.1986).

In an attempt to demonstrate pretext, Akerberg attacks the credibility of Stransbury as a witness, pointing to inconsistencies in his testimony. Stransbury admitted in his deposition that Catty had no retirement program even though he offered Akerberg the opportunity to resign and take retirement. (Stransbury I Dep. 53, Ex. 3.) Furthermore, in a letter dated May 9, 1986, Stransbury stated that Akerberg never got the presses to run over 250 feet per minute. (Stransbury I Dep. Ex. 4.) Yet Stransbury admitted in his deposition that this figure was inaccurate and that the speeds at certain times may have exceeded 250 feet per minute. (Stransbury I Dep. 71.) However, in a summary judgment context, this court will not evaluate the credibility of the witnesses. *See Stratton, supra,* 639 F.Supp. at 429.

Instead, this court must determine whether Akerberg has shown that Catty's articulated reason for firing him was not worthy of credence. *See Kier v. Commercial Union Ins. Cos.,* 808 F.2d 1254, 1259 (7th Cir.1987). Akerberg offers the testimony of James Mellin, claiming that Mellin testified that the presses were already running at 400 feet per minute the January before plaintiff was injured. (Plaintiff's memorandum in opposition to defendant's motion for summary judgment, p. 14.) In his deposition, however, Mellin states that when he started in early 1984, Catty was doing 200 feet a minute and, in a short time after his employment, they were up to 400 feet a minute. (Mellin Dep. 9, 34.) Mellin further testified that approximately three weeks after Stransbury arrived on October, 1984, he terminated his employment with Catty (*Id.* 57.) Mellin also stated that he was unaware of Stransbury's instructions to Akerberg. (*Id.*) Mellin's testimony does not address Akerberg's job perform-

ance and press running speeds under Stransbury. Thus, Akerberg has failed to show by Mellin's testimony that Catty's articulated reason for firing him was not worthy of credence.

■ A plaintiff claiming age discrimination has a larger burden. *Hunn v. Koehring Co.,* 718 F.2d 239, 243 (7th Cir.1983). He must show that "but for" his age, he would not have been fired. *Id.* Without some facts to establish a nexus between his discharge and his age, summary judgment for the defendant must be granted. *Dale, supra,* 797 F.2d at 465.

■ In an effort to tie his discharge to his age, Akerberg claims Catty terminated another employee, Thomas Murdock, the director of sales, age 65, and replaced him with a younger man. However, merely saying another employee over the age of 40 in a different division was terminated is not responsive to termination of the plaintiff in the production area and is not sufficient to generate statistically valid inferences of age discrimination. *See Zick v. Verson Allsteel Press Co.,* 644 F.Supp. 906, 913 (N.D.Ill.1986.) Accordingly, Akerberg has presented no probative evidence indicating Catty's decision as to his discharge was age based.

### III. *Conclusion*

Plaintiff has not satisfied his initial burden of establishing a *prima facie* case of age discrimination, and has presented no evidence to demonstrate that Catty's decision to terminate him was pretext for age discrimination. There are no issues of material fact, and Catty is entitled to judgment as a matter of law.