**Chander AHUJA, Plaintiff,**

v.

**Richard DANZIG, Secretary of the Navy, Defendant.**

**No. 99 C 1825.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 17, 2000.

David T. Arena, Paul A Greco, DiMonte & Lizak, Park Ridge, IL, Michael Lee Tinaglia, Law Offices of Michael Lee Tinaglia, Ltd., Chicago, IL, for Chander N Ahuja, plaintiff.

Cathleen Rene Martwick, Preston Pugh, United States Attorney's Office, Chicago,

IL, for John H Dalton, cap United States Department of the Navy, defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Chander Ahuja has sued Richard Danzig, Secretary of the Navy, alleging that plaintiff's failure to be selected for a vacant social worker position was based on his age and/or gender, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the motion is granted.

### *Facts*

The Department of the Navy conducts basic and technical training for enlisted personnel at the Naval Training Center ("NTC") in Great Lakes, Illinois. Military personnel assigned to the NTC and their families are offered various services such as medical care, legal assistance, and counseling. One such service is the Family Service Center ("FSC"), which provides military personnel and their families with counseling. The FSC has several programs, including the Family Advocacy Program ("FAP"), which is specifically designed to address domestic violence problems through intervention, evaluation and treatment.

On April 1, 1995, the NTC entered into a contract with Michael L. Klestinski & Associates, P.C., for the provision of general family therapist counseling services at FSC. Plaintiff, a male over the age of 40, provided intake/assessment interviews and general counseling as a subcontractor under the Klestinski contract.

Kathleen Rettinger, a female under the age of 40, also began working at FSC on April 1, 1995, as a self-employed contractor. She, like plaintiff, was responsible for general intake/assessment interviews and general counseling. She occasionally worked in the FAP, having been familiar with its workings due to previous employment at the Red Cross NTC, where her duties included domestic violence counseling and work coordinated with the FAP. By the time of her April 1, 1995, contract, she had already served as a member of the FAP Case Review Subcommittee ("CRS") and had co-founded and led the H.O.P.E. group for battered women. Because of this experience, during her period as a self-employed contractor she assisted on an as needed basis with FAP domestic violence interviews, including safety assessments, and had worked as an FAP Domestic Violence Case Manager.

On October 27, 1995, the Navy announced an opening for a social worker in the FAP. Applications were due November 27, 1995. Eligible candidates were required to have a masters degree in social work from an accredited school, and specialized experience consisting of one year of graduate education of a specified level. In addition, candidates were required to hold a license in social work and be eligible to obtain a license in clinical social work within six months of their hiring date.

A job description was issued listing "counseling" as the first major duty. The main focus of an FAP social worker was the evaluation and treatment for victims and offenders of domestic violence. At least 75% of the duties of the position are devoted to domestic violence counseling.

Both plaintiff and Rettinger, among others, initially filed applications. The first step in the hiring process was to rate the applications for general eligibility under the standards issued by the United States Office of Personnel Management. Those ratings were used to determine whether each candidate would be placed on a certificate of eligible applicants. The list of eligible candidates was then sent to the Navy officer responsible for hiring for the position. Both plaintiff and Rettinger were on the list of eligible candidates.

The list of eligible candidates was sent to Lt. Christine Stiles who, as FSC Director, was the Navy officer responsible for hiring. The list of eligible candidates contained three males (including plaintiff) and one female, Rettinger. One male indicated that he was no longer interested, and another failed to respond to inquiries. That left plaintiff and Rettinger as the only eligible candidates.

Because Stiles was not a social worker and did not have substantive experience in social work, she sought help in the decision making process from Kathleen Neville, FSC's Chief of Counseling. Neville reviewed the applications. In addition, Neville was familiar with both plaintiff and Rettinger through her review of their work as FSC contractors. She was familiar with their training, strengths and backgrounds. She knew, for example that Rettinger's work at the NTC Red Cross consisted of providing Navy service members with domestic violence services. Neville had worked with Rettinger on the FAP Case Review Subcommittee and thus knew that Rettinger had presented cases for consideration by that Subcommittee. Neville also knew that Rettinger had co-founded the battered women's H.O.P.E. group and that she ran a group for children who witnessed domestic violence. Those groups were two of the main therapy groups to which FAP counselors referred patients.

Neville recommended that Stiles hire Rettinger. Neville testified that she did so based on Rettinger's familiarity with the Navy advocacy system because of her past experience and training, including her work in domestic violence at the Red Cross Office at the NTC. Stiles agreed with Neville's recommendation and offered the position to Rettinger. Rettinger accepted and began work on October 1, 1996. Stiles informed plaintiff of her decision in May of 1996. Specifically, Stiles told plaintiff that he was not selected because he did not have the experience with domestic violence counseling that was re-quired to do the job. Shortly thereafter, plaintiff spoke with Neville about the decision and told Neville that he thought he was highly qualified for the job. Neville responded that Rettinger had more experience in the domestic violence area.

On July 16, 1996, plaintiff contacted a Navy EEO Counselor and filed an informal complaint alleging that he was not selected for the position because of his gender and age. On August 26, 1996, he filed a formal complaint and the Navy accepted the complaint for investigation. The hearing was held on November 4 and 5, 1998, before an EEOC Administrative Law Judge. The judge issued a formal decision recommending a finding of no discrimination on November 25, 1998. The Department of the Navy adopted the Administrative Law Judge's decision as its final decision on January 5, 1999. Plaintiff filed the instant law suit on March 19, 1999.

### Legal Standards

A movant is entitled to summary judgment under Fed.R.Civ.P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact then the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(c); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990). The court must consider the record as a whole and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Fisher v. Transco Services—Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir.1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There mere existence of a scintilla of evidence in support of the nonmoving parties' position is insufficient. There must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### Discussion

■ Plaintiff may attempt to prove his gender and age discrimination claims either by direct evidence of discrimination or, as is more common, through the indirect burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because he has no direct evidence of discrimination, plaintiff proceeds under the latter. Under this framework, plaintiff must first establish a *prima facie* case of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If plaintiff succeeds in establishing a *prima facie* case, he creates a rebuttable presumption of discrimination and the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the employment decision. If successful, the presumption of discrimination dissolves and the burden shifts back to the employee to prove that the employer's proffered reasons are a pretext for discrimination. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). At all times, plaintiff bears the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against him. *See Hughes v. Brown*, 20 F.3d 745, 747 (7th Cir.1994).

Plaintiff claims that he was denied the FAP social worker position based on his gender and/or age in violation of Title VII and/or the ADEA. To establish a *prima facie* case of sex discrimination under Title VII, or age discrimination under the ADEA, plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was qualified for an open position; (3) he was rejected; and (4) the position was filled with someone not in the protected class. *Mills v. Health Care Service Corp.*, 171 F.3d 450, 454 (7th Cir. 1999).

Plaintiff has no difficulty with elements one, three, and four; he applied for an open position and it was given to a younger female. Defendant asserts, however, that plaintiff cannot establish that he was qualified for the position. Specifically, defendant argues that plaintiff was unqualified because he had never worked in the FAP and had never worked with domestic violence problems in a military setting. Therefore, defendant argues that plaintiff cannot establish a *prima facie* case of discrimination under *McDonnell Douglas*.

This argument is defeated by defendant's own finding that plaintiff was eligible for the position. Indeed, during the initial screening process, plaintiff received an eligibility rating of 99.0 while Rettinger received a rating of 96.0. Although the ratings are assigned by a personnel ratings specialist from the Navy's Human Resources Office in Pensacola, and are only the first step of the hiring process, they at least indicate that plaintiff had the basic qualifications for the position. Accordingly, the court concludes that plaintiff can establish a *prima facie* case under *McDonnell Douglas*.

■ That is as far as plaintiff gets, however, because defendant has articulated a legitimate, non-discriminatory reason for Rettinger's selection, and plaintiff has no evidence of pretext. It is beyond dispute that Rettinger's application indicated a better fit for the job than did plaintiff's

application. A simple review of the applications shows that Rettinger's resume lists eight areas of practical experience regarding services to military families, including leading a domestic violence group for couples, and designing, implementing and leading a psycho-educational domestic violence support group for women. Her resume also indicates her work at the Red Cross NTC as well as her experience working in an emergency room in crisis intervention for victims of sexual assault and domestic violence. In contrast, plaintiff's application, while indicating approximately 30 years of experience in social work, does not include any substantial experience relating to domestic violence either in or out of a military setting. Indeed, work in the field of domestic violence is mentioned only in passing.

Additionally, both Stiles and Neville knew both plaintiff and Rettinger and were familiar with their work and backgrounds. They knew of Rettinger's work at the Red Cross NTC and how that work prepared Rettinger for the open position. Neville, in particular, was familiar with Rettinger's work, having worked with her on the FAP Case Review Subcommittee.

Faced with the overwhelming evidence that Rettinger's initial application demonstrated an ideal fit for the position, plaintiff attempts to demonstrate pretext by arguing that Stiles and Neville used different procedures in evaluating plaintiff and Rettinger. Specifically, plaintiff argues that Stiles looked beyond Rettinger's initial application documents, while limiting their review to the "four corners" of plaintiff's application package. It is undisputed that Rettinger did not attach training certificates and letters of recommendation to her application. Stiles has admitted that after reviewing Rettinger's application, her training certificates and letters of recommendation were pulled from her contract file. Plaintiff argues that this somehow demonstrates that defendant's claim that Rettinger had more domestic violence experience is a pretext for intentional dis-

crimination. The logic of this argument eludes the court. Stiles and Neville looked at the same information for each of the two candidates. Perhaps plaintiff might have an argument if he could point to something in his contract file that would have established (or even suggested) that he was more qualified for the job, but he cannot. There is simply nothing in his file to indicate that he had the domestic violence experience that Stiles and Neville sought.

Plaintiff also complains that Stiles did not interview for the position. Plaintiff suggests that had he been granted an interview, he could have elaborated on his domestic violence experience. Perhaps this is true, and perhaps he could have convinced Stiles to hire him. There is nothing in the record to suggest, however, that the decision not to interview either plaintiff or Rettinger was discriminatory. Stiles and Neville already knew both candidates, and nothing in plaintiff's application indicated any experience that would suggest further investigation would be warranted, particularly in light of Rettinger's obvious qualifications. In short, plaintiff cannot point to anything in the record to question the legitimacy of Rettinger's selection. This court "does not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986). Stiles' selection of Rettinger might have been the wrong decision, but it was not a discriminatory decision. Defendant's motion for summary judgment is granted.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted.