**Dennis GROHS, Plaintiff–Appellee, Cross–Appellant,**

v.

**GOLD BOND BUILDING PRODUCTS, A DIVISION OF NATIONAL GYPSUM COMPANY, Defendant–Appellant, Cross–Appellee.**

**Nos. 87–1527, 87–1568.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1987.

Decided Sept. 27, 1988.

As Amended Sept. 29, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 2, 1988.

See also, D.C., 627 F.Supp. 1555.

Richard E. Lieberman, Ross & Hardies, Chicago, Ill., for defendant-appellant/cross-appellee.

Kathleen Baiunas, Chicago, Ill., for plaintiff-appellee/cross-appellant.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The claim in this case is one of age discrimination. At age 51, Dennis Grohs was fired by his employer of 22 years, Gold Bond Building Products, allegedly because he had difficulty getting along with his peers. Grohs filed an age discrimination suit.

A bench trial was held in district court. Judge Moran, in an oral ruling from the bench, found that Gold Bond was guilty of a nonwillful violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.*, ("ADEA").

Both parties appeal; Gold Bond claiming that there was no ADEA violation; and Grohs claiming that the violation was willful. Because there was insufficient evidence to support a finding that age was a determinative factor in Grohs' dismissal, we reverse.

I.

Gold Bond, a division of National Gypsum Co., manufactures wallboard at a plant in Waukegan, Illinois. In 1979, Dennis Grohs became the Waukegan board plant superintendent. During the early 1980's, the plant suffered a substantial decline in business and a large number of employees were laid off. In February, 1982, the plant was shut down indefinitely, retaining only four supervisors to act as custodians of the equipment. This skeletal staff consisted of Dennis Grohs and three others.

Gold Bond reopened the plant on a 90-day trial basis in early 1983. The company's upper management had attributed the plant's earlier problems to a very bad labor relations environment, particularly in terms of the relationship between the supervisors and the hourly employees. Consequently, Gold Bond decided to implement a new management philosophy with greater emphasis on improving the labor relations atmosphere. Because of this new focus, Gold Bond's management viewed a cooperative attitude as a critical element in keeping the plant open after the trial period.

Michael Ward, the new plant manager, was assigned to reopen the plant, to improve employee relations, and to begin operating successfully within 90 days. He began by reviewing the performance records of the four members of the plant's skeletal crew. Ward's review of Dennis Grohs' last three written evaluations re-

vealed that Grohs had experienced significant problems with labor relations.

In addition to the written record, Ward was provided with information concerning Grohs by other individuals from Gold Bond's management. Included among these were reports that Grohs had been a "disaster" in terms of his labor relations with the employees in his prior role as plant board superintendent. The former plant manager, Tom Brooks, informed Ward that Becky Parkman, the personnel safety supervisor, had complained that Grohs had pulled her on to his lap and grabbed her by the crotch during a supervisor's dinner and that later Grohs spoke of Parkman and another female employee as lesbians. Brooks also relayed information to Ward from Darlene Ramig, the payroll secretary, to the effect that Grohs had told her that he would help her get promoted if she would go to a nearby motel with him.

Jon Roth, the former union president, told Ward that Grohs was "the root cause of most labor management problems at the plant and that the union had repeatedly complained to management about Grohs' actions." Roth also told Ward that black employees were outraged by Grohs' racist references to them as "nigger" and "boy."

After receiving these reports of Grohs' conduct[1] from both Roth and Brooks, reviewing Grohs' file, and personally observing Grohs, Ward decided that Dennis Grohs did not have the new "cooperative attitude" that Gold Bond needed for the 90-day trial period. Consequently, on April 29, 1983, Ward concluded that Grohs was not qualified to remain in his supervisory position and discharged Grohs.[2]

Grohs filed an age discrimination suit pursuant to 29 U.S.C. § 626. A bench trial was held before Judge Moran who determined that Grohs successfully established a *prima facie* case of age discrimination and that Gold Bond's articulated nondiscriminatory reasons for the discharge were manufactured. The judge made a factual determination that Gold Bond had created a "laundry list" or "pretext list" to justify Grohs' dismissal.[3] Both parties appeal to this court.

## II.

This court has held that the critical issue in age discrimination suits is not whether age was the sole factor, but rather, whether age was a "determining" factor, in that plaintiff would not have been discharged *but for* his age. *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984); *Kier v. Commercial Union Ins. Co.*, 808 F.2d 1254, 1257 (7th Cir.1987), *cert. denied*, — U.S. —, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987). It was Grohs' burden of proof to "show that he was discriminated against *because* of his age." *Golomb v. Prudential Ins. Co. of North Am.*, 688 F.2d 547, 550 (7th Cir.1982) (emphasis in original).

The plaintiff may meet his burden of persuasion at trial in one of two ways. First, he may meet it directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge. *Mathewson v. National Automatic Tool Co.*, 807 F.2d 87, 89–90 (7th Cir.1986); *La Montagne*, 750 F.2d at 1409. Second, he may meet it indirectly by utilizing a variation of the Supreme Court's burden-shifting analysis for resolving Title VII cases. This analysis was first set forth in *McDonnell Douglas Corp. v. Green*, 411

---

1. The company had other complaints concerning Grohs' conduct, that he "fondled his genitals in a lewd and public manner" in front of female employees, that he circulated personal rumors among the plant, that employees sabotaged equipment as a way of getting back at Grohs, etc.

2. Gold Bond assigned Grohs to a position as a security guard five or six days before his discharge. After he was discharged as a supervisor, Grohs did not serve as a security guard.

3. The charges Gold Bond made against Grohs were largely complaints about his personality and lack of ability to get along with others and ranged from scratching his crotch to using words like "nigger" and "boy" to refer to workers. There was testimony during the trial that Grohs was hated by the hourly employees and that various female employees had accused Grohs of sexual harassment.

U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and elaborated and clarified in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). This analysis as applied to ADEA cases requires that a plaintiff who files an ADEA claim, must show that he: (1) belongs to the protected class (age forty or older); (2) was qualified for his position; (3) was terminated; and (4) was replaced by a younger person. *Metz v. Transit Mix, Inc.*, 828 F.2d 1202, 1204 (7th Cir.1987). When a plaintiff establishes these criteria, he has made a *prima facie* case of age discrimination and the burden shifts to the defendant to show that plaintiff's discharge was a result of "some legitimate, nondiscriminatory reason." If the defendant meets this challenge, the burden again shifts to the plaintiff to prove that the reasons for the discharge were merely a pretext for discrimination. *McDonnell*, 411 U.S. at 802–05, 93 S.Ct. at 1824–25; *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 17–18 (7th Cir.1987); *Bechold v. IGW Sys.*, 817 F.2d 1282, 1284 (7th Cir.1987); *La Montagne*, 750 F.2d at 1409; *Metz*, 828 F.2d at 1204.

Once the case has been tried, however, the rules about the *prima facie* case, defendant's response and methods of proof no longer are relevant. The remaining issue is whether there was sufficient evidence to support a finding that age was a determinative factor in defendant's dismissal of the plaintiff. *Kier*, 808 F.2d at 1257; *accord United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 558 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987) (Title VII); *Benzies v. Illinois Dep't of Mental Health*, 810 F.2d 146, 148 (7th Cir.1987), *cert. denied*, —— U.S. ——, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987) (Title VII); *Mathewson*, 807 F.2d at 90 (ADEA); *Morgan v. South Bend Community Schl. Corp.*, 797 F.2d 471, 480 (7th Cir.1986) (Title VII). To do this, the plaintiff must show that defendant's proffered reasons for discharge were pretextual. He must demonstrate that (1) the proffered reasons

had no basis in fact, (2) the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge. *Kier*, 808 F.2d at 1259.

In examining the district court's findings, we operate under the clearly erroneous standard of review. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Bechold*, 817 F.2d at 1285.

### III.

The district judge made a factual finding that Dennis Grohs was a "good, strong performer, and he was terminated." The judge indicated that he was "persuaded that age was a factor" in Grohs' termination, characterizing Gold Bond's reasons for Grohs' discharge as "a whole laundry list of irrelevancies." He stated that management's desire for " 'softer' supervision was a factor related to Grohs' age with the sense that ... he is too old." In his oral ruling, the judge said:

There was a feeling that plaintiff was expendable, and it didn't make any difference that he had been there for more than 20 years. They didn't choose to try to teach an old dog new tricks.... Management did want a little softer supervision. So that was a factor, but it was a factor related to the plaintiff's age in the sense of they were, in effect saying: and we're not going to take a chance with him. He has been set in his ways too long; he is too old, and he is expendable.

On the other hand, the district judge also found that Gold Bond had adopted a new 90–day strategy in an attempt to "do or die;" and that the company wanted decertification of its union and improved labor relations. The court found that Grohs' personality did not fit with the "new" image or strategy of the "new" company. Grohs' supervisory style was that of a "head knocker," the court said. "[S]troking [the work force] wasn't," the court conceded, "one of plaintiff's strong points." Gold Bond claims that these findings were not

consistent with a finding of age discrimination.

In support of that claim, Gold Bond first alleges that there was no direct evidence of discrimination. We find this to be true. Plaintiff's proffered direct evidence was the testimony of Robert Sarvis, who claimed that Robert Spitz, Vice President of Operations, instructed Ward to fire Grohs because he was "too old and too fat for the job." The opinion of the district court explicitly discredited this testimony. "I thought to myself:" the district judge said, "I think Mr. Sarvis is verbalizing something that *he* thought back at the time all this happened in 1983" (emphasis added). The district judge opined that "Sarvis leaned on [Ward] a little bit to get rid of Grohs." Plaintiff improperly characterizes this as a finding by the district court that Sarvis himself was the discriminator. This contention, however, has absolutely no support in the record.

Nor is there any indirect evidence that age was a determining factor in Gold Bond's decision to terminate Grohs' employment. The district court characterized Gold Bond's reasons for discharging Grohs as a "laundry list" and a "pretext list." It appears to have done so in part because all of the instances of Grohs' behavior of which the company received complaints occurred two and three years before Grohs' employment was terminated. We recognize that "evidence that the proffered reason for the discharge was something so far removed in time from the discharge itself that it is unlikely to have been the whole cause, even if a part of it," *La Montagne*, 750 F.2d at 1415, can constitute evidence that such proffered reasons are not the sole determining factors. The Gold Bond plant, however, had been shut down since February, 1982. The company had implemented new supervisory standards, requiring skill in labor relations, for the 90–day trial period. Thus, it was necessary to reevaluate the supervisory staff in light of these new standards. The most recent information regarding Grohs' supervisory performance that was available was information dating from 1980 and 1981.

Gold Bond argues as well that even though Grohs formerly was qualified for his position, despite his deficient labor relations skills, the adoption of new management policies allowed it to reevaluate Grohs, and dismiss him because he was no longer qualified. We find that this argument has merit. Whether one is "qualified" for one's job depends upon whether one meets one's employer's legitimate expectations. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed. 2d 1002 (1987); *Huhn v. Koehring Co.*, 718 F.2d 239, 244 (7th Cir.1983). The employer's expectations are measured as of the time the employee is discharged. *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1425 (7th Cir.1986). Thus, whether one is qualified may change from time to time. The fact that an individual may have been qualified in the past does not mean that he is qualified at a later time. As we said in *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1219 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981):

> Qualification obviously depends on the nature of [the employer's] business at any given time. One year an outgoing business-getter type might be best qualified, while in the next, after the business was got, it might be a cloistered scientist, or mathematician. To ignore the shifting nature of qualification from time to time would make the qualification requirement [in plaintiff's *prima facie* case] meaningless. . . .

Thus, although Grohs' performance as a supervisor was adequate in the past, Gold Bond's new emphasis on labor-management relations during the 90–day trial period meant that Gold Bond could find that Grohs was no longer qualified and discharge him. *See Jang v. Biltmore Tire Co.*, 797 F.2d 486, 489–90 (7th Cir.1986) (fact that plaintiff was qualified in the past did not rebut defendant's explanation that plaintiff lacked specific qualifications necessary to fulfill the changing job description; hence, no ADEA violation occurred).

Here, the district court found that Gold Bond wanted to implement a "softer" management style at the Waukegan plant. It also found that Grohs' supervisory approach was that of a "head knocker." The district judge stated that "I do believe that because of the immediate objective [of improving labor-management relations], the fact that plaintiff was one kind of supervisor ... which was not totally what [Gold Bond] had in mind during the immediate future at Waukegan, that that was a factor [in Grohs' dismissal]." In the past, we have held that lack of ability to get along with others, with employees in particular, was a legitimate, nondiscriminatory reason for terminating someone's employment. *See, e.g., La Montagne,* 750 F.2d at 1414 (plaintiff's problems communicating with his superior created divisiveness among employees); *Parker v. Federal Nat'l Mortgage Ass'n,* 741 F.2d 975, 979 (7th Cir.1984) (plaintiff was "not personable, ordinarily a shortcoming for one in a supervisory position").

Thus, as long as Ward's belief that Grohs was not qualified to continue in a supervisory position with Gold Bond was genuinely held, it is not, by definition, a pretext for firing Grohs on account of his age. *Pollard,* 824 F.2d at 559; *Bechold,* 817 F.2d at 1285 (when an employer advances a reason unrelated to a characteristic covered by the statute, the issue "becomes one of credibility in determining whether the belief is genuinely held"); *Dorsch,* 782 F.2d at 1426. As noted above, the district judge found that Grohs' management style was not, "what [Gold Bond] had in mind," that it wanted a "softer" style of supervision, and that Grohs' supervisory style was rather that of a "head knocker."

There is, moreover, insufficient evidence showing age discrimination to the contrary. Employment discrimination cases often involve sensitive and difficult issues of fact. *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482. The evidence of discriminatory intent in this case was sparse. Therefore, it is not surprising that the district judge's oral findings of fact simply do not reflect evidence of age discrimination. There is insufficient proof of disparate treatment, especially in light of the fact that Ward is only three years younger than Grohs, one of the new supervisors is merely five years younger, one is fifteen years younger, and the third is actually two years older.[4] Although Ward's deposition testimony indicates that he thought Grohs was 54, not 51, at the time he was terminated, it thus seems unlikely that Ward thought someone even six years his senior was too old. It is true that Jon Roth, who was 43 at the time, was hired in spite of his people problems. As plaintiff points out in his brief, however, Roth was hired as a supervisor because he was the union president. In a supervisory capacity, Roth could not act on behalf of the union, and the company would have an easier time achieving decertification. This is consistent with Gold Bond's new 90–day strategy, rather than constituting evidence of age discrimination.[5]

Thus, we find that age was not a determinative factor in Gold Bond's decision to terminate Grohs. Grohs was fired because he was no longer qualified for his position under the new management style. The decision to terminate Grohs under these criteria had a basis in fact, because the district judge found that his lack of supervisory abilities was a factor in his dismissal. Even if the allegations about Grohs

**4.** At the time he terminated Grohs, Michael Ward was 48 years old, three years younger than Dennis Grohs. The three men who were hired as new supervisors, after Grohs' dismissal, were aged 36, 43, and 53.

**5.** Gold Bond conjectures that the district court's holding was based on a subjective feeling that Grohs was not terminated for just cause. By speculating that this simply was a case of the company refusing to "teach an old dog new tricks," the district court, Gold Bond argues,

was improperly substituting its own standards of fairness and business judgment for that of the defendant. It is true, of course, that the ADEA "was not intended as a vehicle for judicial review of business decisions." *Kephart,* 630 F.2d at 1223. We also have said that "it is not the court's duty to determine the validity of the defendant's business decision as long as the decision was made in good faith." *Dorsch,* 782 F.2d at 1426.

were not true, Ward genuinely believed that they were. Lack of supervisory skills is, as discussed above, sufficient to motivate the discharge of an employee. Here, there is little or no direct or indirect evidence that Grohs' discharge was brought about by any concerns other than his ability to supervise employees in a "softer" manner.

It is the task of the appellate court to "determine whether the trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence." *Ratliff v. Milwaukee*, 795 F.2d 612, 617 (7th Cir.1986). Gold Bond claims that the district court's characterization of the company's stated reasons for dismissing Grohs as a "pretext list" does not fit with the court's other findings. The trial court incongruously made factual findings that Grohs' supervisory style was that of a "head knocker" and that Gold Bond had adopted new "softer supervision" policies to which Grohs did not conform. Oral findings by any judge may sometimes be internally inconsistent. We find that to be the case here. In some cases such inconsistencies may be reconciled on appeal. Here, however, the lack of evidence makes such reconciliation impossible. Thus, based on the district court's contradictory findings, the determination that Gold Bond's termination of Grohs was a result of age discrimination and not based on legitimate business reasons, was clearly erroneous.

## IV.

Grohs requests this court to find that the age discrimination was a willful violation of the ADEA. Grohs contends that there was sufficient evidence in the record to support this finding, and that the court erred by neglecting to characterize Gold Bond's misconduct as willful.

Because we find that Gold Bond did not violate the ADEA, we need not address the issue of whether that alleged violation should have been characterized as willful or nonwillful.

## V.

The evidence in the record is insufficient to find that age was a determinative factor in plaintiff's dismissal, constituting a violation of the ADEA. We therefore REVERSE.