Ogden KILGORE, Ronald Lorang, Arylene Watlington and Joseph Kuligoski, Plaintiffs,

v.

SEARS, ROEBUCK AND CO., Defendant.

No. 85 C 7600.

United States District Court, N.D. Illinois, E.D.

Aug. 9, 1989.

L. Steven Platt, Hugh B. Arnold, Arnold and Kadjan, Chicago, Ill., for plaintiffs.

John F. McClure, Michael A. Stiegel, Adele Rapport, Neil P. Stern, Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

This case is before the court on the motion of defendant, Sears Roebuck and Co. ("Sears"), for summary judgment on the complaint of plaintiffs, Ogden Kilgore ("Kilgore"), Donald Lorang ("Lorang"), Arylene Watlington ("Watlington"), and Joseph Kuligoski ("Kuligoski"). For the reasons herein stated, the motion is granted.

### Joseph Kuligoski

Kuligoski worked for Sears for some twenty-eight years. On June 5, 1985 he was fired at the age of fifty-five. Kuligoski alleges that this discharge violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1988), which states in pertinent part that "it shall be unlawful for an employer to ...discharge any individual ...because of such individual's age." *Id.* at § 623(a)(1).

Sears moves for summary judgment on the grounds that no reasonable jury could return a verdict for Kuligoski based upon the evidence in the record. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). In order for a jury to return a verdict for Kuligoski it would have to reasonably find that age was a determining factor in Kuligoski's

discharge. *La Montagne v. American Convenience Prdts., Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984).

Kuligoski bears the burden of proving such discrimination. *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). He may discharge this burden either by producing direct evidence of discrimination, or by utilizing the indirect burden-shifting method of proof, originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to age discrimination claims. *See Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988). Kuligoski offers evidence under the latter method.

 In the indirect method of proof the employee has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If he succeeds in so doing a rebuttable presumption of discrimination arises, *id.* at 254 n. 7, 101 S.Ct. at 1094 n. 7, and the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for its action. *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1364 (7th Cir.1988). If the employer succeeds in producing such a reason the burden of production shifts back to the employee who must then prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons but rather a pretext for discrimination. *Id.*

The first three elements of the *prima facie* case which Kuligoski must prove are that (1) he was in the protected class (40 or older); (2) his job performance met his employer's legitimate expectations; and (3) he was discharged or demoted. *Id.* The parties disagree and the precedent is inconsistent as to what the fourth element should be. Kuligoski claims, and at least three cases in the Seventh Circuit have held, that the plaintiff only needs to prove that the employer "sought a replacement" for the plaintiff. *Mechnig*, 864 F.2d at 1364 n. 5.

Sears claims, and at least three cases in the Seventh Circuit have held, that the plaintiff needs to show that he was "replaced by a younger person," which is a much stricter standard. *Id.* The Seventh Circuit has twice declined to resolve this inconsistency. *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 427 n. 2 (7th Cir.1989); *Mechnig*, 864 F.2d at 1364 n. 5. Because Kuligoski's case and those of his co-plaintiffs turn on other factors, it makes no difference that the court here applies the former standard.

Kuligoski's age, fifty-five, places him within the protected class. Moreover it is undisputed that he was discharged and replaced. Thus the crucial issue is whether he can establish by a preponderance of the evidence that his job performance satisfied Sears' legitimate expectations. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). This factor envisions a bifurcated inquiry, i.e., (1) whether the employer's expectations were legitimate, and (2) if so, whether the employee was meeting those expectations. *Id.* As to the first prong of this inquiry the court must determine whether the employer communicated its expectations to the employee and whether those expectations were unreasonable. *Id.* There is ample evidence in the record that Sears repeatedly warned Kuligoski not to engage in altercations with fellow employees and customers, and to otherwise follow company rules. Kuligoski does not contend that these expectations were unreasonable and the court sees no reason to conclude otherwise.

Thus summary judgment turns on whether, based on the evidence presented, a jury could reasonably find by a preponderance of the evidence that Kuligoski was meeting Sears' expectations. Sears has introduced substantial evidence that despite its repeated warnings, Kuligoski continued to violate company rules and act abusively toward fellow workers and employees. It points to numerous oral reprimands and written "deficiency memoranda" issued to Kuligoski that document these violations.

It also points to deposition testimony in which Kuligoski repeatedly admits engaging in the activities that gave rise to many of these reprimands and memoranda.

Kuligoski's response is that the memoranda and reprimands he received have no basis in fact and were fabricated over a two-year period, from 1983 to 1985, for the sole purpose of justifying his termination. He supports this claim by introducing evidence that: (1) he received a courtesy award just prior to his termination; (2) his pre–1983 supervisor, Randolyn Johnson ("Johnson"), once stated that she "had no real problems with him."; (3) a co-worker, Judy Howard, testified that she had only one argument with him; and (4) a co-worker, Bernice Pulio ("Pulio"), stated that there were no problems with his work on orders she handled and that she had no knowledge of arguments or run-ins with fellow employees. He further notes that at the time he was fired he was one of the store's leading salesmen.

The evidence is not sufficient to preclude summary judgment for several reasons. First, it does not refute nor even address the numerous instances of misconduct to which Kuligoski has already admitted. Second, it offers little proof as to whether Kuligoski was performing adequately at the time he was discharged. The courtesy award was given for Kuligoski's work with only one customer and is not evidence of the overall quality of his work. Johnson did not work with Kuligoski after 1983; Pulio did not work with Kuligoski full time. In any event, Johnson and Pulio's assessments of Kuligoski's performance are insufficient to impeach the legitimacy of Sears' expectations. *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). The sales totals, while obviously an important part of a salesman's performance, are not the sole criterion by which such performance is measured, and certainly do not refute Sears' claims of Kuligoski's abusive behavior and rule violations.

Perhaps most important, the court notes that the question before it

"[i]s not whether the company's methods were sound, or whether its dismissal of [plaintiff] was an error of judgment. The question is whether he was discriminated against because of his age. Although an employer may not make unreasonable expectations, and must make the employee aware of just what his expectations are, beyond that the court will not inquire into the defendant's method of conducting its business. If [plaintiff] was not doing what his employer wanted him to do, he was not doing his job."

*Kephart*, 630 F.2d at 1223.

Finally, the court notes that Kuligoski admits in his response brief that "he fully satisfied Sear's [sic] employment expectations *for all but the last seventeen months of his employment.*" Response brief at 1 (emphasis added). Inasmuch as the employer's expectations are measured as of the time the employee is discharged, *Grohs v. Gold Bond Bldg. Prdts.*, 859 F.2d 1283, 1287 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989), this remarkable admission proves that even Kuligoski himself believes that he was not living up to expectations when Sears fired him. Thus a jury could not reasonably find that he was meeting Sears' expectations at the time he was discharged, and he has failed to state a *prima facie* case of age discrimination.

Even assuming *arguendo* that Kuligoski could carry this burden however Sears has articulated a legitimate, nondiscriminatory reason for his discharge—i.e., their determination that he had engaged in a pattern of abusive behavior and violations of company rules. This satisfies Sears' burden of production, and shifts the burden back to Kuligoski to prove by a preponderance of the evidence that their stated reasons were a pretext for age discrimination. *Dale*, 797 F.2d at 464. He may do so by showing either that (1) Sears' explanation is unworthy of credence, or (2) that it is more likely that a discriminatory reason motivated Sears' actions. *Id.*

■ The employee may demonstrate that the employer's reasons are unworthy of credence by presenting evidence that the

proffered reasons either (1) had no basis in fact; (2) did not actually motivate his discharge; or (3) were insufficient to motivate his discharge. *Kier v. Commercial Union Insurance Companies*, 808 F.2d 1254, 1259 (7th Cir.), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987). In determining whether Kuligoski has met any of these standards, the court does not sit as a super personnel department that reexamines an entity's business decisions. *Dale*, 797 F.2d at 464. Rather the court's inquiry is limited to whether the employer gave an honest explanation of its behavior. *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

Kuligoski clearly has not made two of these three types of showings. First, Sears' reason has a basis in fact, as Kuligoski himself admitted much of the abusive behavior and rule violations complained of. Moreover, these infractions were certainly sufficient to motivate the decision.

That leaves the question of whether the reason Sears proffered actually motivated Kuligoski's discharge. Kuligoski claims it did not, arguing that his discharge was part of a concerted plan undertaken by Sears to reduce the number of senior employees. In support of this position he alleges, and Sears does not deny, that the firm undertook organizational changes when it implemented its "Store-of-the-Future" project. These included a reduction of the number of full time employees and an elimination of store management positions. Moreover, he notes that several older workers subsequently left the store. He also quotes his own deposition and those of various co-workers for conjecture that the purpose and effect of the changes was to eliminate older workers.

This is not enough to raise a genuine issue of material fact concerning whether Kuligoski's termination was more likely motivated by age, or whether Sears' reliance on Kuligoski's abusive behavior and policy violations was worthy of credence. As for Kuligoski's theory that Sears had engaged in a pattern of age discrimination, the Seventh Circuit has noted that "reducing the number of managerial employees can be a legitimate business decision, as can a decision to hire less costly part-time employees instead of full-time employees ...[A] change in managerial styles is not age discrimination unless older employees are singled out for harassment." *Mechnig*, 864 F.2d at 1367. The burden is on the employee to come forward with evidence of such harassment. It is not sufficient to merely make general assertions; rather the plaintiff must come forward with specific factual examples of differential treatment of older and younger employees. *Id.* Kuligoski fails to meet this requirement. Moreover, he has failed to prove that the reasons articulated for his discharge in particular were a pretext for age discrimination. Indeed, Sears has introduced evidence that Kuligoski was replaced by a worker several years older than he. In light of the weakness of Kuligoski's evidence, the violations and other incidents to which he has admitted, and Sears' good faith reliance on these matters in discharging him, the court believes a reasonable factfinder could not find in his favor on the question of pretext. Consequently, it is proper to grant Sears' motion.

### Arlene Watlington

■ Watlington worked for Sears for some sixteen and one-half years. On October 25, 1984 she was fired at age fifty-two. The reason given for her discharge was her consistently poor performance as the store's "4C" manager—i.e., the person in charge of credit, catalog operations, customer service and cashier services. Watlington alleges that she was fired on the basis of her age in violation of the ADEA.

Having no direct evidence of age discrimination, Watlington proceeds by the indirect method. Sears moves for summary judgment on the ground that she has failed to present enough evidence to establish a *prima facie* case of discrimination. In particular, Sears claims that no reasonable jury could conclude that she was satisfying the firm's legitimate expectations at the time of the discharge.

Watlington argues however that Sears never communicated its expectations to her as required under *Dale.* *See* 797 F.2d at 463. In particular, she notes that when she took over as 4C manager she did not know much about two of the "C"s for which she was responsible—credit or customer service. Her manager for the first eleven months of her job told her not to worry about these "C"s and to concentrate on catalog sales instead. Her subsequent manager, Lawrence Pierron ("Pierron"), who took over in February of 1984, was very critical of Watlington for the store's poor performance in these areas. She claims however that he spent no time teaching her the proper way to function in these areas, did not supervise or direct her, and rarely talked to her about her various responsibilities. Indeed, the only instructions he gave came in the context of Memorandum of Deficiency Interviews ("MDI") —written notices of unsatisfactory performance which Watlington claims are insufficient to communicate Sears' expectations for her.

The court does not agree. It is clear that an employer's repeated oral and written criticisms of an employee's performance constitute sufficient notice of its legitimate expectations. *Dale,* 797 F.2d at 463. Here Sears plainly provided such criticisms. The first MDI Pierron sent Watlington in April, 1984 detailed his dissatisfaction with her poor credit solicitation, her failure to follow through with his request for a breakdown of the Miscellaneous Income Account, her handling of customer complaints, her failure to display catalogs throughout the store, and her lack of follow through and administrative organizational skills. He also requested a profit and loss statement for the catalog division. The second MDI Pierron sent on May 18, 1984 criticized Watlington for her handling of customer complaints, her interaction with fellow staff and division managers, the lack of progress in improving credit solicitation, and her failure to cross-time 4C employees. It also warned her that a failure to improve her performance would result in discharge.

In June of 1984 Pierron sent Watlington a credit inspection summary in which he complimented her on her relationship with Credit Control, again noted the store's poor performance in credit solicitation, and emphasized the need for immediate credit training of sales personnel. In August Pierron sent Watlington an evaluation of her performance and gave her a below-acceptable rating. In September Pierron sent Watlington another MDI for the store's continued problems with credit solicitation, pointing out that she had not set up credit solicitation booths as he had requested nor staffed them properly. He also noted that she had done little to train salespeople to avoid chargebacks resulting from bad checks despite his having spent substantial time training her in these matters. On October 19, 1984 Pierron sent Watlington another deficiency memorandum in which he noted his dissatisfaction with the way she was handling credit denials, criticizing her gross profit analysis, noted her failure to address delays in billing, and again noted the store's poor credit solicitation performance. Six days later Sears discharged Watlington. Clearly, Pierron's repeated efforts to notify Watlington by memoranda and other criticism of the shortcomings in her performance sufficiently communicated Sears' expectations to her. Inasmuch as no reasonable jury could conclude otherwise, Watlington cannot defeat summary judgment on these grounds.

Watlington next argues that an issue of fact exists as to whether she was meeting Sears' legitimate expectations. The court does not agree. In opposing a motion for summary judgment the non-moving party may not rest on his pleadings but must set forth specific facts to establish the existence of an issue of fact. Fed.R.Civ.P. 56(e). Watlington points to promotions and other job actions from 1970 to 1983. This information is irrelevant to the *prima facie* case. As noted above, an employer's expectations are measured at the time the employee is discharged. *Grohs,* 859 F.2d at 1287. Thus it makes no difference whether Watlington was previously meeting those expectations.

Watlington fails to present sufficient evidence to enable a reasonable factfinder to

find that her performance was adequate at the time of discharge. Notably she does not refute the evidence Sears has presented indicating that for at least her last six months as 4C Manager her store was among the worst in credit solicitations—indeed, she admits this fact to be true. Moreover, she remarkably also makes the further admission that she satisfied Sears' expectations "for all but the last six months of her employment." *Response brief* at 1.

The balance of plaintiff's evidence consists of references to her own deposition and citations to the depositions of co-workers other than her supervisor who complimented her abilities. This evidence is irrelevant; it is the opinion of the supervisors responsible for her performance that counts in establishing a *prima facie* case. *Kephart*, 630 F.2d at 1223. In light of the evidence Sears has introduced, a reasonable trier of fact could not find that she was meeting Sears' expectations. Accordingly, she cannot make out a *prima facie* case.

Even assuming *arguendo* she could do so, she has failed to present sufficient evidence to enable a reasonable factfinder to determine that her firing was pretextual. She asserts that her firing was motivated by an animus toward older employees—specifically that she and other older workers were targeted for elimination as a means of cutting payroll. The only evidence she can point to in support of this theory is the speculation and opinion testimony of co-workers. No statistical evidence or other objective testimony is presented that would enable a reasonable jury to reach such a conclusion. Indeed, the only evidence in the record of this sort leads to the opposite conclusion. Sears replaced Watlington with an employee of virtually the same age (five months younger) and whose annual salary was $11,000 more than Watlington's, but who consistently received superior evaluations. Clearly, the only reasonable conclusion from this evidence is that Sears was motivated not out of a concern over age or payroll but rather the quality of its employees' performance. Whatever the business wisdom of Sears'

decision in discharging Watlington, she has not presented sufficient evidence to allow a reasonable jury to find that it made that decision because of her age. Thus it is appropriate to grant Sears summary judgment on her claim.

*Ogden Kilgore*

■ Kilgore began working for Sears in September, 1949. On February 9, 1984 he was discharged at the age of fifty-three from his position as 4C Manager of Sears' Oak Brook store. Kilgore claims that he was fired as a result of a conscious effort by Sears to eliminate older workers. Sears moves for summary judgment arguing that he has not introduced sufficient evidence to enable a reasonable factfinder to find in his favor.

Sears claims it would be unreasonable to conclude that he was meeting the firm's legitimate expectations at the time he was fired. Notably, Sears points out, *inter alia*, that in the year before he was fired his supervisor, Mr. Logan, gave him five deficiency interviews and only a "fair" annual rating. The Credit Control Managers criticized his handling of the credit department in their overall review, and his store finished last in a contest among the Chicago stores in obtaining new credit applications. Moreover, Kilgore admitted on more than one occasion that he had failed to perform as required.

In response Kilgore cites the opinions of his co-workers. This does not create a basis upon which a reasonable factfinder could determine he was meeting his employer's expectations. *See Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 924 (7th Cir.1988). For purposes of establishing a *prima facie* case the only assessments that matter are the assessments of those who are responsible for the decision to discharge. *Dale*, 797 F.2d at 465. Kilgore also cites evidence from the period prior to the year before he was fired. This, too, is irrelevant for, as noted above, the employer's expectations are measured at the time the employee is discharged. *Grohs*, 859 F.2d at 1287. Next, Kilgore notes that during 1983 he received a raise.

Sears responds without contradiction however that the raise was a mistake and that it followed what was only a short-lived improvement in Kilgore's performance—which deteriorated thereafter. Indeed, he received three more deficiency interviews to the Credit Manager's report and his store lost the credit application contest thereafter. Thus even if it were reasonable to find that at the time of his raise he was meeting his employer's expectations, such a finding would not be reasonable as of the time of his discharge.

Finally, Kilgore notes that the credit applications for his store exceeded the goal for the year. It is equally clear however that his supervisors nevertheless remained critical of his handling of these applications, set forth in the deficiency interviews and Credit Manager's report, and were as critical of the other aspects of his job as well. As the Seventh Circuit has noted, an employer:

> "can set unrealistic standards and fire an employee for not being able to meet them; he can ...try to force a square peg into a round hole—and throw away the peg when it does not fit. He can be as arbitrary as he wants—he just cannot treat an older employee more harshly than a younger one."

*Palucki v. Sears Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir.1989) (citations omitted). Clearly, when taken as a whole, the evidence in the record is insufficient to allow a reasonable jury to conclude that Kilgore was meeting the standards that Sears was setting. Thus he cannot establish a *prima facie* case.

Even if it were reasonable to find that Kilgore had done so, his supervisor's extensive criticism of his performance constitutes a legitimate reason for discharge. Moreover, Kilgore has failed to introduce sufficient evidence to allow a finding of pretext. He claims that his firing was part of a larger, overall plan Sears instituted to cut costs by targeting older workers for termination. Kilgore fails to introduce any credible evidence—statistical or otherwise—in support of this claim however.

Instead, he relies on unsupported accusations, speculation and hearsay.

Sears does not deny that at the time Kilgore was fired it was implementing its "Store-of-the-Future" project to modernize its merchandising practices. Such a reorganization does not *ipso facto* constitute age discrimination even where it results in the termination of older workers, *Dale*, 797 F.2d 465 n. 11. Instead the plaintiff must present evidence that would enable a factfinder reasonably to find that the reorganization resulted in an "abnormal shift" in the number of terminations of older workers. *Id. See also Mechnig*, 864 F.2d at 1367. Here Kilgore has failed to carry that burden, requiring the court to grant Sears summary judgment on his claim.

### Ronald Lorang

■ On July 31, 1984 Lorang retired as manager of the auto center at the Fox Valley Sears store in Aurora, Illinois. Lorang was fifty-one years old. He claims that he was "forced" to retire early or "effectively fired" from his job in violation of the ADEA. Sears moves for summary judgment on the grounds that he has failed to present enough evidence to enable a reasonable jury to find in his favor on this claim.

First, Sears argues that Lorang has failed to introduce evidence that he was constructively discharged—i.e., that Sears had made his working conditions so intolerable so as to force him into involuntary resignation. *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 314 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). Lorang notes that he had always had an exemplary career, receiving as late as June of 1983 a "very good" overall rating from his supervisor, Robert Broadwell ("Broadwell"). Then the roof fell in: in August, 1983 Broadwell sent Lorang a letter informing him that his work was unacceptable; in January of 1984 Broadwell gave him an overall performance rating of "fair"; on February 21, 1983 Broadwell gave him his first memorandum of deficiency; and, on July 25, 1984, Broadwell gave Lorang his second memorandum

of deficiency and told him a "fair" rating could not survive. Furthermore, he stated that Lorang could not survive and that Cliff Hooks ("Hooks"), Broadwell's supervisor, wanted Broadwell, Lorang and a third employee "out of here." The next day Lorang went to Broadwell and said that maybe it was time for him to take an early retirement—a decision that he was required to make before July 31, 1984 to be entitled to certain benefits. On August 1, 1984 Broadwell's replacement, Mr. Stein ("Stein"), told Lorang that his decision to retire was a "wise choice."

Sears argues that it would be unreasonable to find, based upon these communications to Lorang, that he was constructively discharged. The Seventh Circuit has noted that employees

> "[m]ust endure adverse reactions and other signs of displeasure when their productivity falls off. An employer's communication of the risks of the job does not spoil the employee's decision to avoid those risks by quitting. Were it otherwise, any employee about whom there was dissatisfaction would have a jury case under the ADEA, even if the dissatisfaction were supported by objective indicators (such as low productivity)."

*Henn v. Natl. Geographic Society*, 819 F.2d 824, 830 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). Clearly, insofar as Lorang's productivity fell off, Sears was entitled to communicate its displeasure therewith. The August 1983 letter, the January 1984 performance rating, the memoranda of deficiency from February and July of 1985, and Broadwell's statement that a "fair" rating would not survive, were all plainly communications of the sort and therefore not actionable. Moreover, while Broadwell's other statements (that Lorang himself would not survive and that Hooks wanted him out) and those of Stein might raise an issue of fact as to whether Sears would have fired Lorang had he not retired, a reasonable jury could not conclude from them that Sears would have fired him *because of his age*. Thus Lorang has failed to state a

*prima facie* case of constructive discharge. *See Henn*, 819 F.2d at 830.

Lorang attacks the various performance reviews as having no basis in fact—i.e., that his productivity did not fall off and therefore the deficiency notices were merely fabricated as part of an overall plan to reduce the firm's staff of older full-time managers. The short answer to this argument is that Lorang has not established a *prima facie* case of age discrimination and therefore the court need not inquire as to whether Sears' evaluation of Lorang's performance was pretextual. Even assuming *arguendo* however that Lorang had introduced enough evidence to give rise to a "suspicion of discrimination—enough so as to require the employer to explain his conduct," *Henn*, 819 F.2d at 828, Lorang has failed to demonstrate that the deficiency notices lacked any basis in fact, *Kier*, 808 F.2d 1254, 1259. Indeed, there is ample evidence that Lorang's performance dropped over the period in question. Moreover, Lorang has failed to introduce any credible evidence that Sears, in fact, engaged in a plan to force older employees into early retirement. Thus it would not be reasonable for a factfinder to determine that Sears sent Lorang the memoranda, warnings and other communications complained of as part of a larger plot to eliminate him, one way or another, because of his age.

## CONCLUSION

For the foregoing reasons, the court grants Sears summary judgment on the claims of Kilgore, Lorang, Watlington and Kuligoski.

IT IS SO ORDERED.