Octavia O. HARRISTON, on her Behalf and on Behalf of the class of other persons similarly situated, Plaintiffs,

v.

CHICAGO TRIBUNE COMPANY, a corporation, Charles Brumback, President, John Sloan, Vice President, and Vincent Riordan, Manager of Central Division of Retail Advertising, Defendants.

No. 87 C 8875.

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1991.

See also 134 F.R.D. 232, 136 F.R.D. 482.

934

Hope Freeman Keefe, Robert J. Leoni, Brunswick, Keefe & Deer, Blue Island, Ill., for plaintiffs.

Octavia O. Harriston, pro se.

John W. Powers, Brenda D. Hofman, Brenda H. Feis, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the motion of plaintiff Octavia Harriston ("Harriston") for class certification and the motion of defendants Chicago Tribune Company, Charles Brumback, John Sloan and Vincent Riordan (collectively "the Tribune") for summary judgment. For the following reasons, Harriston's motion is denied and the Tribune's motion is granted.

## FACTS

Harriston, a black woman, worked for the Tribune's Chicago Tribune newspaper from 1965 to 1989.[1] She brought the instant lawsuit against the Tribune in October 1987. The present motion is addressed

1. The facts set forth herein, unless otherwise noted, are taken from undisputed portions of the Tribune's Statement of Material Facts.

to the plaintiff's fourth amended complaint, filed in March 1990. The remaining counts from that complaint allege racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[2]

Harriston began working for the Tribune as a part-time voluntary ad-taker in 1965. She thereafter earned a series of promotions within the newspaper's Advertising Department, in 1980 reaching the position of Display Sales Person in the Retail Advertising Department. The instant lawsuit involves Harriston's December 1984 transfer to the position of EEO/Employment Manager in the Employee Relations Department, her June 1987 transfer back to the Advertising Department as a Senior Sales Representative, and her June 1989 resignation.

The EEO/Employment Manager job involved hiring new employees, recruiting on college campuses, filing EEO reports with the government, and handling discrimination disputes. Harriston had accepted the EEO position reluctantly; she had neither experience in personnel matters nor a college degree. Nevertheless, she viewed the EEO job as a "major opportunity" and "great challenge." The EEO position was a grade 13 position in the Tribune's system, while her former Display Sales job was at grade 9.

Harriston received one formal performance evaluation as EEO/Employment Manager in June 1986, during which she told George Veon, then the Tribune's Vice President of Employee Relations, that she was "really up over [her] head" and was "struggling" in the position. She received a "satisfactory" rating, the middle level on a five-point scale.

During the relevant time period, the Tribune had a Management Incentive Fund ("MIF"), a "discretionary bonus program" involving only job positions with an effect on profitability and which were not included in a sales incentive program, among other participation requirements. Harriston was not included in the program during her stint as EEO/Employment Manager, nor were any of her three predecessors in the post included. Two of the predecessors were white females, and one was a white male. Harriston's successor as EEO/Employment Manager, Ron Williams, a black male, became eligible for the MIF program when responsibilities for the position were increased. Harriston, however, contends that her responsibilities in that position were as extensive as Williams's.

Defendant John Sloan ("Sloan") was hired by the Tribune as Director of Human Resources in December 1986, and Harriston began reporting to him. In April 1987, Sloan succeeded Veon as Vice President of Employee Relations. Sloan devoted his first six months at the Tribune to restaffing the Employee Relations Department with "seasoned professionals." To that end, he hired a black woman as Training and Development Director and an Hispanic man as Employee Relations Manager for the Freedom Center production plant. These two positions were eligible for participation in the MIF program.

Around this time, Sloan became dissatisfied with Harriston's work as EEO/Employment Manager, and he received complaints about her performance from managers of other Tribune departments and from her subordinates, among others. Consequently, Sloan decided that Harriston and the Tribune would be better off if Harriston transferred back to the Advertising Department.[3] Sloan inquired about

---

**2.** Additional claims by Harriston alleging violations of 42 U.S.C. § 1981 (racial discrimination) and 42 U.S.C. § 2000e(e)(3) (intentional infliction of emotional distress and retaliation) were dismissed by this court in October 1989.

**3.** Harriston contests whether other department heads complained about her performance, and

the accuracy of Sloan's evaluation of her performance. The court finds, however, that Harriston's statement of material facts, filed pursuant to General Rule 12(n) of the Rules of the U.S. District Court for the Northern District of Illinois, is insufficient to controvert the Tribune's statement under Rule 12(*l*) as to the matters set forth in the above paragraph. *See* Rule

openings in Advertising suitable for Harriston, and after learning of a Senior Sales Representative opening, informed Harriston. The Senior Sales Representative position was grade 14, a grade higher than the EEO/Employment Manager position.

Harriston promptly spoke with defendant Vincent Riordan ("Riordan"), Central Division Manager of Retail Advertising and Harriston's manager during his earlier stint in Advertising, about the available Senior Sales opening. The opening was for an "A" territory, with considerable opportunity to earn bonuses. The position also included responsibility for coordinating a new co-op advertising program (known as "RECAS"). Riordan also explained the Advertising Department Incentive Program for which Harriston would become eligible in the Senior Sales job. Harriston accepted the Senior Sales position effective in June 1987 at an annual salary of $51,500—a $2,000 increase from the post she was leaving.

In June 1988, a year after Harriston rejoined Advertising, she received her first evaluation as a Senior Sales Representative, earning a mid-range "satisfactory" rating from Riordan, but with criticism of her level of sales. Harriston's territory suffered revenue losses of $60,000 in the last half of 1987, and $25,000 in the first five months of 1988, as well as lost market share from the prior year.[4] She nonetheless received an annual raise of $2,060. Riordan saw more problems with Harriston's work in 1988; she failed to serve several of her advertising accounts properly, and revenue in her territory declined $256,984 for the year compared to the previous year.

Harriston was removed from the RECAS project by Riordan in January 1989 to allow her to focus more on advertising sales. Revenue continued to decline, however, in Harriston's territory, falling by $75,000 in the first four months of 1989. Riordan sent a memo to Harriston in May 1989 stating his dissatisfaction over the situation. The memo did not threaten Harriston's job status, but included a three-week deadline for Harriston to respond to various criticisms in the memo. Instead of responding, Harriston submitted a resignation letter on June 7, 1989.

Harriston seeks certification of a class consisting "of all black persons who because of their race were excluded from management positions (including grade levels 10–18 and above) and blacks who were also denied equal employment opportunity to participate in employee benefits," such as the MIF program, "because of their race."

Additionally, the following claims remain pending from Harriston's fourth amended complaint:

Count I alleges that the Tribune, in violation of Title VII, discriminated against Harriston on the basis of race by (1) excluding her from participation in the MIF program while she was EEO/Employment Manager, (2) demoting her from the EEO/Employment position to a Senior Sales Representative position, (3) refusing to promote her after she accepted the transfer to the Senior Sales job, and (4) constructively discharging her by inducing her resignation through harassment.

Count II alleges that, in violation of the ADEA, the Tribune demoted Harriston from the managerial EEO/Employment position; replaced her in that position with a younger, under age 40, man; failed to promote her after she transferred back to the

---

12(n); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Throughout her 12(n) statement, Harriston frequently fails to supply specific factual support for her contentions, with specific citations to the record. Such inadequate responses constitute admissions to the relevant points in the Tribune's 12(*l*) statement. *Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500 (7th Cir. 1990).

4. Harriston's 12(n) statement refers to various materials, including a excerpt from Advertising Age and a Riordan memorandum, indicating that advertising revenues were generally depressed during the period at issue. The Tribune asserts in its 12(1) statement, without specific contradiction from Harriston, that revenue increased $2.4 million overall in Riordan's division in 1987.

Advertising Department; and constructively discharged her.

## DISCUSSION

■ Under Federal Rule of Civil Procedure 23(c)(1), a court must rule on class certification before acting on the merits. *Lorance v. AT & T Technologies, Inc.,* 827 F.2d 163, 165 n. 1 (7th Cir.1987). Harriston filed her motion for class certification in April 1990, roughly two and a half years after she filed her initial complaint. In October 1989, several months before the class certification motion was filed, this court dismissed a count in Harriston's second amended complaint containing class allegations under 42 U.S.C. § 1981. The dismissal opinion stated that if Harriston were to seek class certification, the motion would be denied because Harriston is not similarly situated to a purported class of blacks who were not hired or promoted by the Tribune. *Harriston v. Chicago Tribune Co.,* No. 87 C 8875, slip op. at 5 n. 1 (N.D.Ill. Oct. 6, 1989). This court also found at that time that Harriston's delay in seeking class certification also revealed her inadequacy as a representative of the purported class. *Id.* (citing *East Tex. Motor Freight Sys., Inc.,* 431 U.S. 395, 403–05, 97 S.Ct. 1891, 1896–98, 52 L.Ed.2d 453 (1977). Based on the fuller record now available, the court reaffirms its earlier findings in this regard. Harriston has failed to show the existence of common factual questions among the class, or that she is an adequate class representative, and has therefore failed to satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2), (3), and (4).

With the class certification question out of the way, the court can move on to the summary judgment motion. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is "genuine" if

the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Nevertheless, in determining the existence of any genuine issues of material fact, the court must draw all reasonable inferences in the light most favorable to the non-movant. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

■ Regarding Harriston's claim that she was demoted from the EEO/Employment Manager position in violation of Title VII, she has the initial burden of establishing a prima facie case by showing (1) that she is a member of a racial minority, or other protected class (2) that she was qualified for the position she held, (3) that she was performing the job in an adequate manner, (4) that she was fired or demoted, and (5) that after the firing or demotion, a member of a non-protected class was given the position. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Flowers v. Crouch–Walker Corp.,* 552 F.2d 1277, 1282 (7th Cir.1977).

The courts finds that as to the fourth and fifth elements, there is no genuine issue of material fact. It is uncontradicted that Harriston received a $2,000 annual salary increase when she transferred from the EEO/Employment Manager position to

the Senior Sales Representative position, and that the latter position was a grade 14 position, one grade higher than the former position in the Tribune's system. Clearly, Harriston was not demoted or fired when she was transferred to the Senior Sales job. She contends that she was demoted because the EEO/Employment position was in management, while the Senior Sales position was non-management, but she fails to explain the legal significance of the managerial, non-managerial distinction, if it is accurate. Moreover, Harriston does not dispute that she was replaced in the EEO/Employment job by a black person, someone in the same protected class as herself.

■ Harriston's claim that she was excluded from the MIF program is also deficient. To comply with the second element of a prima facie case under Title VII, Harriston must show she was qualified for the MIF program. She does not dispute, however, that none of her predecessors in the EEO/Employment position were eligible for the MIF program. Harriston has simply failed to offer evidence from which it could be inferred that exclusion of the EEO/Employment Manager position from the MIF program (until Harriston's black successor took the position) constituted race discrimination in violation of Title VII.

■ Analysis under a disparate impact theory further shows that the Tribune is entitled to summary judgment on Harriston's MIF exclusion claim. Harriston has offered insufficient evidence from which it could be inferred that she was treated differently from whites for MIF-eligibility purposes. *Collins v. Illinois,* 830 F.2d 692, 698 (7th Cir.1987). She has also failed to offer evidence that might undermine the Tribune's proffered profit-enhancement business justification for the MIF eligibility rules. *See Allen v. Seidman,* 881 F.2d 375, 377 (7th Cir.1989) (the challenged business practice need only "serve[ ], in a significant way, the legitimate employment goals of the employer") (quoting *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 2125–26, 104 L.Ed.2d 733 (1989)). In short, Harriston has failed to

show either that the MIF eligibility rules, as applied to her, had either the effect or purpose of race discrimination.

■ Harriston's evidence in support of her claim that the Tribune failed to promote her in violation of Title VII is also insufficient as a matter of law. The uncontradicted facts show that Harriston was promoted to the EEO/Employment Manager position, and that she was thereafter transferred back to an advertising sales position without loss of job status. She does not identify any higher positions within the Tribune that she sought, was qualified for, or which were subsequently filled with members of a non-protected class. There is nothing even remotely resembling a prima facie case under Title VII regarding the Tribune's alleged failure to promote Harriston.

■ The last claim in Harriston's Title VII count, alleging that she was constructively discharged, also lacks sufficient evidentiary support to withstand the Tribune's summary judgment motion. A constructive discharge is established only when a employer *"makes* an employee's working conditions so intolerable that the employee is forced into an involuntary resignation ..." *Bartman v. Allis–Chalmers Corp.,* 799 F.2d 311, 314 (7th Cir.1986) (quoting *Vaughn v. Pool Offshore Co.,* 683 F.2d 922, 926 (5th Cir.1982)), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). The working conditions must have been "so onerous or demeaning that the employee has effectively been fired in place and compelled to leave." *Henn v. National Geographic Soc'y,* 819 F.2d 824, 829–30 (7th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987).

Harriston alleges that, after she was transferred back to Advertising, Riordan engaged in a harassment campaign at the directions of defendants Sloan and Charles Brumback between 1987 and 1989, with the intention of forcing Harriston's resignation. The alleged campaign included a series of steps allegedly intended to make it difficult for her to sell advertising (such as by forcing her to work on the RECAS project and assigning her to an inferior

sales territory), reprimanding her more severely than white advertising sales persons when her sales figures declined, excluding her from office activities, and failure to respond adequately when her car was vandalized in a company parking lot.

The court finds, however, that these allegations, to the extent they are supported by the evidentiary materials, are insufficient to establish a constructive discharge as a matter of law. Harriston does not dispute that her sales performance declined, although she does contest the extent of the decline. The Tribune's response, some critical memos and requests that Harriston develop a remedial response, does not seem onerous under the circumstances. As the Seventh Circuit noted in *Henn:* "[s]elling is a risky profession, and it does not make a salesman's job unbearable to remind him that he must produce and that there are penalties for failure." 819 F.2d at 830. Harriston was given an opportunity to explain her problems to her superiors; she chose instead to resign. It does not appear under the circumstances that Harriston was forced into that decision. The working conditions Harriston faced were not sufficiently onerous to establish a constructive discharge.

 Finally, the court finds that the Tribune is entitled to summary judgment on Harriston's parallel claims under the ADEA for reasons similar to those pertaining to Harriston's Title VII claims. Harriston's initial burden of establishing a prima facie case under the ADEA is a modified version of her Title VII burden: she must show (1) her membership in the protected age class (at least age forty), (2) that she is qualified for the position held or sought, (3) termination or demotion from that position, and (4) replacement by a person under age forty. *Grohs v. Gold Bond Bldg. Prods.*, 859 F.2d 1283, 1285–86 (7th Cir.1988). Here Harriston falters on the third element; as discussed above, she was not terminated or demoted from the EEO/Employment Manager position.

The Tribune is entitled to summary judgment on Harriston's failure-to-promote and constructive discharge claims under the ADEA for the reasons discussed above with regard to the parallel claims under Title VII.

## CONCLUSION

For the above reasons, the court denies plaintiff Harriston's motion for class certification, and finding that there are no genuine issues of material fact with regard to Harriston's claims under either Title VII or the Age Discrimination in Employment Act, grants defendant Tribune's motion for summary judgment.

IT IS SO ORDERED.